## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GARY ROSS, )
)
          Plaintiff, )
)
v. ) Case No. 18-2631-CM-JPO
)
PENTAIR and UNITED )
STEEL WORKERS LOCAL 13 )
)
          Defendants. )
)

### MEMORANDUM AND ORDER

Plaintiff Gary Ross has filed a four-count first amended complaint (Doc. 13) against his employer, defendant Pentair,[1] alleging that it has discriminated and retaliated against him based on his race. Before the court presently is Pentair's motion to dismiss the complaint. (Doc. 18.) Plaintiff asserts no claims against the labor union, defendant United Steel Workers Local 13, in his amended complaint; that entity is no longer a party in this lawsuit. For the reasons outlined below, the court grants in part and denies in part Pentair's motion to dismiss.

### Background

According to the first amended complaint, plaintiff began work at Pentair on or about September 12, 1994. He has worked in various capacities over the years, but is currently an assembler. Although plaintiff has had an excellent employment record with Pentair, he asserts that he has also been the target of discrimination and retaliation because he is African-American. In April 2014, he recounts that he and another African-American employee were "singled out by management for performance standards and alleged policy violations," although white employees were working in the

---

[1] Defendant Pentair instructs the court that the official name of the company is Pentair Flow Technologies, LLC.

-1-

same manner and not being disciplined. Plaintiff expressed his concerns about this, and filed a grievance with his union. In September 2015, he filed another grievance. Pentair management began to share information concerning plaintiff's pay and overtime with his co-workers without his permission.

In 2016, Pentair began to "micromanage" plaintiff's performance and attendance, although white employees were not similarly micromanaged. Plaintiff expressed his concern over "issues regarding" the celebration of the Martin Luther King Jr. holiday in January 2016. In February 2016, he was reprimanded based on the false accusation of a co-worker. Plaintiff's response during that disciplinary meeting was that he believed he was being singled out because of his race and previous claims of discrimination. In August 2016, plaintiff reported to upper management that he was continuing to experience discrimination and harassment; the following month he tried to file a grievance about this treatment. In October 2016, plaintiff and an African-American co-worker filed a complaint with the EEOC outlining Pentair's race discrimination, disparate treatment and retaliation. Although plaintiff received a "Right to Sue" letter from the EEOC, he did not pursue a lawsuit. However, after he filed the EEOC complaint, things got even worse at work.

In January 2017, a co-worker followed plaintiff into the restroom and stood outside the stall. Plaintiff reported this co-worker for sexual harassment. After a brief investigation, Pentair discounted plaintiff's claim as not credible. In April 2017, a co-worker threatened to kill plaintiff. Plaintiff's account of the ramifications of this event are contradictory. He says that management witnessed the threat and that he also reported it, but no action was taken. He also claims that the company disciplined the co-worker although they had determined the co-worker's behavior was not a threat. Plaintiff appealed this decision but received no relief. Starting in June 2017, plaintiff's African-American friend was repeatedly disciplined for work and safety actions which he had previously

performed without repercussion. Plaintiff and his friend shared their experiences and determined that non-African-Americans were not being disciplined for these actions. In July 2017, the company approached plaintiff about a possible new position, but he was also told that he might be laid off. He did not apply for the position. In August, he began working in "the impeller cell," but was told it was an apprenticeship program and that if a position opened he could bid on it. That same month, he and his friend complained to management about the firing of a third African-American worker who was terminated after damaging a product, although a non-African-American worker had also damaged a product at around the same time and had not been disciplined.

In January 2018, plaintiff bid on two utility worker positions, but was notified that he was not eligible to bid on them. The positions were then "removed" and filled by unqualified non-African-American workers who were trained on the job. In April 2018, Pentair fired an African-American worker who was plaintiff's friend. On July 5, 2018, plaintiff filed another complaint with EEOC about Pentair's continued discrimination and retaliation. Plaintiff is still with the company and alleges that he is still being discriminated against. In addition, he has been required to work in dangerous conditions without proper training or equipment. Plaintiff, along with some co-workers, has complained about the dangerous conditions, but Pentair's sole response has been to deny plaintiff promotional opportunities. This hostile environment causes plaintiff fear, stress and anxiety.

Plaintiff attaches his July 5, 2018 EEOC charge to his amended complaint. (Doc. 13-1.) On the form he indicates that the events constituted a continuing action that took place between February 15, 2015, and January 8, 2018. He describes the events as follows:

I. Respondent hired me on or about September 12, 1994. My most recent job title is Assembler and my immediate supervisor is Gerald Johnson (white), supervisor. Throughout the tenure of my employment, I have performed my job in a satisfactory manner.

> II. In or about May 2017, I filed a charge of racial discrimination against the respondent.
>
> III. Since 1996, and continuing to the present, I have attempted to move into a position as a repairperson. In or about late 2016 or early 2017, I approached Ron Barner, Superintendent (white), about moving into the repairperson job. Mr. Barner denied my request because he claimed that I needed to know how to run the CNC machine. Since then, and continuing to the present, I am aware of other similarly situated white employees who have received training on how to run the CNC machine.
>
> IV. I believe that respondent discriminated against me because of my race, black, and in retaliation for my participation in protected activities, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Doc. 13-1.) The EEOC closed its file without a finding, and issued plaintiff a Right to Sue letter on August 23, 2018. Plaintiff timely filed suit in this court on November 21, 2018. (Doc. 1.)

## **Standard of Review**

On a motion to dismiss a complaint brought pursuant to Fed. R. Civ. P. 12(b)(6), the court assumes all well-pled facts in the complaint are true, and permits all reasonable inferences from that pleading. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). Legal conclusions worded as factual allegations must be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). In the context of discrimination claims, it is not necessary that the plaintiff set forth all elements of a prima facie case in the complaint, but "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2010).

## **Analysis**

The court will examine each of plaintiff's counts and the allegations set forth separately, identifying the operative legal standards as needed.

### *Count One*

In Count I, plaintiff alleges that Pentair violated two federal civil rights statutes, 42 U.S.C. § 2000e ("Title VII") and 42 U.S.C. § 1981 ("§ 1981"), when it retaliated against him for reporting discrimination and safety concerns. Pentair retaliated by ignoring plaintiff's complaints and by opposing his attempts for promotional opportunities.

### *Title VII*

Title VII prohibits discrimination in employment based on someone's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Its procedural requirements are strict and specific. First, a claimant must exhaust administrative remedies by filing a charge with the federal Equal Employment Opportunity Commission ("EEOC") or a similar authorized state agency. *Khader v. Aspin*, 1 F.3d 968, 970 (10th Cir. 1993); *Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 661 (D. Kan. 2014). In Kansas, in cases of racial discrimination, the claimant must file the charge within 300 days of the employer's discriminatory action. 42 U.S.C § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Henderson v. Int'l Union*, 263 F. Supp. 2d 1245, 1273–74 (D. Kan. 2003). Once the EEOC has the opportunity to investigate the charge and the employer is notified of the allegations, the claimant is provided with a "Right to Sue" letter. If the claimant chooses to pursue a lawsuit, it must be filed within 90 days of the issuance of the Right to Sue letter. *Mackley*, 296 F.R.D. at 661. The claims brought in a lawsuit must mirror the claims made in the EEOC charge, because those are the claims which the EEOC has investigated and tried to resolve, and they are the claims about which the employer has been duly notified. *Smith v. Cheyenne Retirement*

*Inv'rs, L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018).  However, the court may construe the EEOC charge with some liberality when comparing it with the claims in the complaint.  *Id.*

In the present case, plaintiff filed his EEOC charge on July 5, 2018; as a result, it can reach back no more than 300 days, to cover only company conduct occurring <u>after</u> September 8, 2017.  The actions complained of in the charge are the company's failure to transfer plaintiff to a repairperson job in late 2016 or early 2017, months before September 2017.  Consequently, the charge itself is filed out of time, in reference to its complained-of conduct.  Moreover, the allegations in the charge – that the company failed to promote plaintiff to a repairperson spot in 2016/17 – vary significantly from the claims in the complaint, which are that the company failed to permit him to bid on utility worker positions in January 2018, in retaliation for his complaints about workplace safety and discrimination.  Even with a liberal interpretation, does not find that the EEOC's investigation of Pentair's hiring decisions with respect to the repairperson spots, and CNC training, in late 2016 and early 2017 would have led to a review of the 2018 utility worker bidding process.  *See Cheyenne Retirement*, 904 F.3d at 1164–65 ("The ultimate question is whether the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge.") (internal punctuation omitted).  For these two reasons – the untimeliness of the EEOC charge and the failure to exhaust the specific claims outlined in the amended complaint – the court grants Pentair's motion to dismiss the Title VII claim of retaliation in Count I.

### *42 U.S.C. § 1981*

Plaintiff also claims in Count I that Pentair's alleged retaliatory conduct was a violation of § 1981.  This statutory section differs from Title VII in that it addresses only racial discrimination, it does not require a prior filing with the EEOC, and it provides a more generous four-year limitation period.  *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1192 (10th Cir. 2002).  To establish a prima facie

case of retaliation, the plaintiff must show that: 1) he or she engaged in protected conduct; 2) that the employer took an action that a reasonable employee would consider materially adverse; and 3) that the two had a causal connection. *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008).

In reviewing the amended complaint for examples of plaintiff's protected conduct, the court identifies ten potential incidents: 1) plaintiff filed a complaint and grievance stating he was being harassed because of his race in September 2015; 2) plaintiff expressed concern about the Martin Luther King Jr. holiday in January 2016; 3) plaintiff told management that he was experiencing discrimination and harassment in February 2016; 4) and again in August 2016; 5) plaintiff filed an EEOC charge alleging race discrimination and retaliation in October 2016; 6) plaintiff reported a co-worker for sexual harassment in January 2017; 7) plaintiff reported that a co-worker threatened to kill him in April 2017; 8) plaintiff complained to management about the discriminatory treatment his co-worker received after damaging a product in August 2017; 9) plaintiff filed his July 2018 charge with the EEOC; and 10) plaintiff has repeatedly voiced concerns about dangerous working conditions. Assuming that, even where plaintiff has not specified, his complaints made their way to Pentair management, and viewing these instances in the light most favorable to plaintiff, the court determines that these incidents fall within the scope of protected conduct. *See Mondaine v. Am. Drug Stores, Inc.*, 408 F. Supp. 2d 1169, 1190 (D. Kan. 2006).

Plaintiff establishes the second prong as well. Plaintiff alleges that he bid on two utility worker positions in January 2018, but was told he was ineligible to bid on the jobs. He alleges furthers that non-African-American employees were hired for the positions, and were trained after they were hired. The court will also consider, as incorporated by reference,[2] the claim made in plaintiff's July 2018 EEOC charge, that he was denied a transfer to a repairperson job in late 2016 or early 2017. In

---

[2] Plaintiff has referenced and attached the EEOC charge to his amended complaint. Its authenticity is not disputed, and the court has reviewed it. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

addition, plaintiff makes other vague claims concerning his efforts to switch jobs, such as participating in an apprenticeship program in the impeller cell and being told he would have to bid on a position there if one opened. Giving the plaintiff the benefit of all inferences for the purpose of analyzing Pentair's motion to dismiss, the court will assume these employer actions would be perceived as materially adverse by a reasonable employee.

The third prong of the prima facie case requires plaintiff to provide some plausible factual allegations from which the court could infer that his failure to be promoted was causally linked to his protected conduct. The court can find none. There is not enough factual material provided in the complaint to permit the court to make this inference. Instead, plaintiff relies on conclusory statements such as, "There is a direct causal connection between Mr. Ross' protected activity and the adverse employment action." These unsupported legal conclusions are the type the court has been instructed by the Supreme Court to disregard. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Because plaintiff has not provided factual allegations sufficient to support a plausible inference that he was denied promotional opportunities in retaliation for his engagement in protected conduct, his claim of retaliation pursuant to 42 U.S.C. § 1981 must be dismissed.

### *Ignored complaints*

Finally, whether brought under Title VII or § 1981, a claim of retaliation cannot arise from Pentair's ignoring plaintiff's complaints of discrimination and retaliation. A necessary element of a claim of retaliation is an adverse employment action on the part of the employer. *Somoza*, 513 F.3d at 1212. While failure to promote a qualified candidate is likely to be considered an adverse employment action, ignoring an employee's complaints is not. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006); *Daniels v. U.P.S., Inc.*, 701 F.3d 620, 629 (10th Cir. 2012); *Johnson v. Weld Cty.,*

-8-

*Colo.*, 594 F.3d 1202, 1216 (10th Cir. 2010). Consequently, the portion of plaintiff's Count I that sets forth Title VII and § 1981 violations based on Pentair's disregard for his complaints is dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

For all these reasons, the court grants Pentair's motion to dismiss Count I of the amended Complaint in its entirety.

### *Count II*

In Count II, plaintiff alleges that Pentair subjected him to harassment and discrimination because of his race, in violation of Title VII. As the court explained above, a claim made pursuant to Title VII must have first been presented to the EEOC or similar authorized state agency within 300 days of the complained-of incident. The Title VII lawsuit which follows the plaintiff's receipt of the agency's Right to Sue letter must track the claims made in the EOOC charge. *Henderson*, 263 F. Supp. at 1273–74. Here, plaintiff filed his charge more than 300 days after he was denied the opportunity to switch to a repairperson job. Not only was the charge untimely, but the specific allegations of discriminatory failure-to-promote in the charge are not included in the complaint. In addition, the charge includes no allegations of harassment. Consequently, plaintiff has failed to comply with the procedural requirements of Title VII, and this count must be dismissed.

### *Count III*

Count III sets forth allegations intended to demonstrate that Pentair violated Kansas public policy on workplace safety when it retaliated against plaintiff by denying him opportunities for promotion after he complained about safety standards. Kansas has recognized public policy exceptions to the common law doctrine of employment at will, one of which protects employees who have been discharged in retaliation for whistle-blowing. *Palmer v. Brown*, 752 P.2d 685, 689–90 (Kan. 1988).

> To maintain such action, an employee has the burden of proving by clear and convincing evidence, under the facts of the case, a reasonably prudent person would

> have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; the employee was discharged in retaliation for making the report.

*Id.* at 690. The tort has been expanded beyond incidents of termination to cover coercive and adverse employment actions such as retaliatory demotions, and now includes "any employment action that is materially adverse to a reasonable employee," at least for public employees. *Hill v. State*, 448 P.2d 457, 469 (Kan. 2019). Considering the claim in the light most favorable to plaintiff, the court assumes that plaintiff's failure to promote claim is sufficiently adverse. A more significant obstacle for plaintiff, however, is the absence of allegations that plaintiff reported actual safety violations. Plaintiff's "whistleblowing must be based on violations of specific and definite rules," rather than "a personal opinion of wrongdoing." *Goodman v. Wesley Med. Ctr., LLC*, 78 P.3d 817, 822–23 (Kan. 2003); *see also Benjamin v. Bd. of Trs. of Barton Cty. Cmty. Coll.*, No. 17-cv-2557, 2019 WL 414396, at *12 (D. Kan. Feb. 1, 2019). Plaintiff has provided no factual allegations about what safety rules were violated, the time frame of those violations, to whom he reported them, or what steps he took to report them. He merely states that he "believed that PENTAIR was engaging in workplace safety violations" which he reported to corporate management and union officials. This is insufficient to state a plausible claim for relief. Consequently, the court grants Pentair's motion to dismiss Count III.

### *Count IV*

In his final count, plaintiff alleges that Pentair has discriminated against him based on his race, in violation of § 1981. Included in this count are allegations that Pentair "denied and continues to deny Plaintiff of employment opportunities," and did not treat plaintiff "equally with regard to Defendant's application of its workplace policies."

-10-

To state a prima facie claim of discriminatory failure-to-promote under § 1981, plaintiff must provide plausible factual allegations that demonstrate that 1) he is a member of a protected class; 2) he applied for a position for which he was qualified; 3) he was rejected; and 4) after the rejection, the position remained open or was filled by someone else. *Hoang Nguyen v. Unified Gov't of Wyandotte Cty./Kan. City, Kan.*, No. 16-2654, 2017 WL 2080622, at *2 (D. Kan. May 15, 2017). In his amended complaint, plaintiff states that he bid on two utility worker positions in January 2018, that he was told he could not bid on them, and that the positions were filled by unqualified non-African-Americans. In his 2018 EEOC charge, incorporated by reference into the complaint, plaintiff alleges that he has tried to move into a repairperson position since 1996, that he was told in late 2016 or early 2017 by Superintendent Ron Barner that he was not qualified for the position because he did not know how to run the CNC machine, but that other white employees were trained on the machine.

The second part of plaintiff's claim, for disparate treatment, requires that plaintiff show that he is a member of a protected class, that he suffered an adverse employment action, and that similarly-situated employees outside his protected class were treated more favorably. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1260 (10th Cir. 1977); *Valdez v. Tyco Int. Sec. LLC*, No. 2-16-cv-16, 2019 WL 267469, at *6 (D. Utah Jan. 18, 2019). In support of this claim, plaintiff alleges that, in 2016, he was "micromanaged" while no white employees were subjected to similar scrutiny. Plaintiff's other allegations of disparate treatment are either out of time (an incident in April 2014 took place prior to the start of the four-year statute of limitations), or targeted plaintiff's co-workers, rather than plaintiff himself.

While both sets of allegations are admittedly limited, the court deems that they are sufficient to "nudge" plaintiff's claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiff "is not required to set forth a prima facie case for each element . . . ." *Khalik*, 671 F.3d at

-11-

1193.  In discussing the heightened pleading requirements adopted by the Supreme Court, the *Khalik* court noted, ". . . [T]he *Twomby/Iqbal* standard recognizes a plaintiff should have at least some relevant information to make the claims plausible on their face." *Id.*  Discrimination may be established through circumstantial evidence. *Ramsey*, 642 F.2d at 1007–08.  Moreover, discrimination "can be inferred from the mere fact of differences in treatment." *McAlester*, 851 F.2d at 1260; *Valdez*, 2019 WL 267469, at *6.  Based on the claims asserted by plaintiff, the court holds that it is possible to make a plausible inference that he was discriminated against in the areas of disciplinary treatment and promotional opportunity.

As these claims advance, the burden will shift to Pentair, in accordance with the *McDonnell Douglas* burden-shifting-framework, to come forward with its own evidence of a legitimate, non-discriminatory reason that they repeatedly failed to promote plaintiff, and to explain its allegedly disparate disciplinary policies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "The shifting burdens of proof of *McDonnell Douglas* are designed to assure that plaintiff has his day in court despite the unavailability of direct evidence of discrimination." *Ramsey v. City & Cty. of Denver*, 907 F.2d 1004, 1007–08 (10th Cir. 1990).

## **Conclusion**

As explained above, plaintiff's Count I, alleging wrongful retaliation under Title VII and 42 U.S.C. § 1981, is dismissed for failure to comply with statutory procedural requirements, and for failure to state a claim under Fed. R. Civ. P. 12(6).  Count II, alleging harassment and discrimination in violation of Title VII, is likewise dismissed for failure to comply with procedural requirements.  Count III, alleging that Pentair's failure to promote plaintiff represented a violation of Kansas public policy, is dismissed for failure to state a claim.  Pentair's motion to dismiss Count IV of plaintiff's amended complaint, alleging Pentair discriminated against plaintiff in contravention of 42 U.S.C. § 1981 by

failing to promote him and subjecting him to disparate discipline, is denied.  Count IV may proceed to the next step in this litigation.

**IT IS THEREFORE ORDERED** that Pentair's motion to dismiss the amend complaint is granted as to Counts I, II and III, but denied as to Count IV.  No judgment shall enter until the case is closed.

Dated this 9th day of December, 2019, at Kansas City, Kansas.

                                      **s/ Carlos Murguia**
                                      **CARLOS MURGUIA**
                                      **United States District Judge**