**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**GARY ROSS,**

Plaintiff,

vs.

**PENTAIR, ET AL.,**

Defendants.

Case No. 2:18-cv-02631-HLT-JPO

**DEFENDANTS' REPLY SUGGESTIONS IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff's Suggestions in Opposition to Defendant's Motion for Summary Judgment has failed to demonstrate any triable issue of fact with regard to Plaintiff's claims of race discrimination and harassment under Section 1981. Most notably, he has not put forth *any evidence whatsoever* that any of the conduct he complains of was race-based. This fact alone is fatal to his claim.

The only actionable adverse action Plaintiff alleges is failure to hire for two machinist positions. However, the undisputed evidence is that Plaintiff never applied for the positions he complains about not being selected for – and that all those selected did apply. DSOF ¶¶ 20, 31-33. Plaintiff does not dispute that there was a procedure for submitting bids set forth in the CBA, and that he failed to follow it when he did not submit bids for the positions. DSOF ¶¶ 17-18. He does not and cannot controvert that all of those selected for the positions did follow the procedure set forth in the CBA by submitting bids for the positions. DSOF ¶¶ 35-42. There is no evidence of pretext, no triable issue of fact, and Plaintiff's failure to hire claim fails as a matter of law.

Plaintiff also attempts to base his discrimination claim on a single disciplinary action Plaintiff received in 2016 and alleged denial of overtime hours. Those claims cannot survive summary judgment.  A single disciplinary action, which was later removed from Plaintiff's personnel record, is simply not an actionable adverse employment action and cannot form the basis of Plaintiff's race discrimination claim.  The evidence is undisputed that any reduction in Plaintiff's overtime hours resulted from CBA's requirement that overtime be distributed equally among employees within each classification or labor grade.  DSOF ¶¶ 53-56.  Moreover, there is no evidence to tie either of these actions to Plaintiff's race.

Plaintiff harassment claim also fails as a matter of law.   Plaintiff alleges only three incidents of "harassment" over the course of the four-year statutory period, none of which are race-based.  His harassment claim, if he asserted one, fails as a matter of law because he did not allege severe or pervasive conduct based on his race.

There are no triable issues of fact, and Pentair is entitled to judgment on all of Plaintiff's claims.

## I. DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO ITS STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND RESPONSES TO PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

Each of Defendant's Statements of Uncontroverted Fact ("DSOF") are deemed admitted unless specifically controverted. FED. R. CIV. P. 56(c)(1), (e); D. Kan. Rule 56.1(a). Plaintiff explicitly admits the material facts in these paragraphs are undisputed: DSOF ¶¶ 1-4, 6-14, 19, 24-25, 27-28, 35, 38, 40, 48, 50-53, 57-60, 62-64, 68, 71-72, 74.

### A. All of Defendant's Facts Are Admitted

Although Plaintiff purports to dispute or partially dispute[1] the remaining facts set forth by Defendant, Plaintiff's responses – many of which are identical and apparently copied and pasted repeatedly – frequently do not even address, much less controvert, the statement of fact. Those facts accordingly are deemed admitted for the purpose of summary judgment. D. KAN. RULE 56.1(a). His responses are otherwise improper and contain irrelevant, immaterial, inadmissible information, or argument presented as fact. These facts, accordingly, also should be deemed admitted. *See Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1526 n. 11 (10th Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)) ("In opposing a motion for summary judgment, the nonmovant must make a showing that, 'if reduced to admissible evidence,' would be sufficient to carry the nonmovant's burden of proof at trial."); *see also Thomas v. International Business Machines*, 48 F.3d 478, 485 (10th Cir. 1995) ("generalized, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for

---

[1] Plaintiff responded with "undisputed in part and disputed in part" to the allegations in DSOF ¶¶ 16-17, 22, 23, 30, 32-34, 37, 43, 44, 65 and 67. Plaintiff responded with "disputed" to the allegations in ¶¶ 5, 15, 18, 20, 21, 26, 29, 31, 36, 39, 41, 42, 45-47, 49, 54-56, 61, 66, 69, 70, 73, 75-76

summary judgment.") (citations omitted). Thus, all 76 of Defendant's facts are undisputed and the Court should deem them admitted.

**B. Plaintiff's Responses and Additional "Facts" Are Not Based on Admissible Evidence and the Court Should Disregard Them**

In addition to his responses to Defendant's Statement of Uncontroverted Facts, Plaintiff added additional factual allegations in paragraphs ¶¶ 77-121. But the vast majority of Plaintiff's Statement of Material Facts ("PSOF") are based solely on inadmissible evidence and should therefore be disregarded by the Court.

**1. The Court Should Strike the Declarations Submitted by Plaintiff Because They Are Not Based on Personal Knowledge**

A declaration used to support or oppose a motion for summary judgment must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4*); Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir.2006). "Conclusory and self-serving affidavits are not sufficient." *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir.1995). Additionally, statements of a declarant's subjective beliefs are not admissible evidence that can be considered for summary judgment. *Tavery v. United States*, 32 F.3d 1423, 1427 n. 4 (10th Cir.1994) (Under Rule 56, statements supporting motion for summary judgment must be based on personal knowledge; "statements of mere belief must be disregarded.") Declarations that do not meet the standards of Rule 56 are subject to a motion to strike. *See Noblett v. Gen. Elec. Credit Corp.*, 400 F.2d 442, 445 (10th Cir.1968).

Declarations asserting personal knowledge must include enough factual support to show that the declarant possesses that knowledge, and statements based on "information and belief" must be disregarded for summary judgment. FED. R. EVID. 602 ("A witness may testify to a

matter only if evidence is introduced sufficient to support a finding that witness has personal knowledge of the matter."); *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc*., 339 U.S. 827, 831 (1950) (affidavit supporting motion for summary judgment made on information and belief does not comply with Rule 56); *Told v. Tig Premier Ins. Co*., 149 F. App'x 722, 725–26 (10th Cir. 2005) ("Information and belief have no place in an affidavit supporting a motion for summary judgment or a response thereto.").

Plaintiff submitted declarations from Plaintiff, Tony Ross[2], Wanda Massie, and Anthony Palmer that are not based on the witnesses' personal knowledge and Defendant therefore asks the Court to strike those declarations and disregard them.

By way of example, the declarations contain blanket statements that each of them "served as witness to much of the discriminatory and retaliatory treatment Mr. Ross alleges in his First Amended Complaint" with no detail or particularity, and with no evidence to supporting a finding that the witnesses have personal knowledge of any allegation in Plaintiff's Amended Complaint. T. Ross Decl. ¶ 6; Massie Decl. ¶ 7; Palmer Decl. ¶ 6. Such blanket statements do not comply with Rule 56(c) and are not admissible at summary judgment. *Told v. Tig Premier Ins. Co*., 149 F. App'x 722, 725–26 (affirming summary judgment and district court's decision to strike and disregard a declaration containing "a blanket statement that the facts in the response and cross-motion were true to the best of [the witness's] knowledge, information and belief" and "completely devoid of particularity and detail.").

The declarations also contain identical statements regarding unspecified positions not going through the bid process, the award of unspecified jobs to unidentified Caucasian employees, management "arbitrarily and discriminatorily[sic]" granting unidentified Caucasian

[2] Tony Ross is the Plaintiff in *Ross v. Pentair*, Case No. Case 2:19-cv-02690-SAC-GEB.

employees apprenticeships, and blanket statements that "no African American employee" was granted an apprenticeship. T. Ross Decl. ¶¶ 7, 9, 10, 13, 14; Massie Decl. ¶¶ 8, 10, 11, 14, 15; Palmer Decl. ¶¶ 7, 9, 10, 13, 14. The witnesses also make identical statements about the process for submitting bids, Plaintiff's alleged applications for two unspecified positions, and the use of pre-bid forms. T. Ross Decl. ¶¶ 11, 12, 16; Massie Decl. ¶¶ 13, 16, 18; Palmer Decl. ¶¶ 11, 12, 15. However, the declarations provide absolutely no evidence that the witnesses possess personal knowledge of personnel decisions, personnel records, union procedures, bidding procedures, or records of employee bids. As co-workers of Plaintiff and not human resources employees or union officers, the witnesses were "not in a position to acquire such comprehensive knowledge." *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (affirming summary judgment and affirming district court's decision to disregard and strike the declaration of plaintiff's co-worker stating no females had been terminated). The Court should disregard these statements.

Finally, Plaintiff cannot use a declaration submitted with summary judgment to create a sham issue of fact. "[C]ourts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Law Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1169 (10th Cir. 2009). Here, Plaintiff attempts in Paragraph 7, 16, and 23 of his declaration to create sham issues of fact. For example, in Paragraph 7, he claims he did not have the opportunity to review his Amended Complaint before answering questions about it. That is not the case, however, and Plaintiff's review of the Amended Complaint is made clear in his deposition testimony. Pl. Dep. 6:10-16, 47:3-55:20.[3] Paragraph 16 contradicts Plaintiff's testimony regarding his bids for previous positions and for the positions at issue in this case.

[3] See Exhibit 1 to Plaintiff's Opposition.

DSOF ¶¶ 19-21, 31-33. The Court must disregard those paragraphs of his Declaration and should strike them.

In addition to those paragraphs mentioned above, the following paragraphs must be disregarded because they are not based on personal knowledge, are conclusory, and contain the subjective beliefs of the witnesses:

Declaration of Tony Ross: ¶¶ 5, 20, 22, 23, 24, 25, 26, 27.

Declaration of Wanda Massie: ¶¶ 6, 30, 31, 32, 33, 34, 37, 38, 39, 40, 41, 44.

Declaration of Anthony Palmer: ¶¶ 5, 22, 25, 30, 31, 33, 34, 35, 37, 38.

Declaration of Plaintiff Gary Ross: ¶¶ 6, 8, 10, 11, 13, 14, 15, 25, 26, 27, 30, 33, 34, 37, 40, 42, 44.

**2. The Court should strike the audio recordings because Plaintiff failed to authenticate them.**

To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. FED. R. EVID. 901. With regard to audio recordings, sufficient foundation includes witness testimony about the date and time of the recording as well as the manner of recording. *See e.g. Rush v. Illinois Cent. R. Co.*, 399 F.3d 705, 722 (6th Cir. 2005*); Aerotech Res., Inc. v. Dodson Aviation, Inc.*, 91 F. App'x 37, 45 (10th Cir. 2004) (affirming district court's decision to exclude audio recording).

Here, Plaintiff has provided no such foundation for the audio recordings submitted to the Court. He simply states in his declaration that he made three audio recordings, and purportedly identifies the other speaker(s)[4] on the recording – he provides no date, time, manner of recording,

[4] Although Plaintiff's declaration testimony claims that the third recording is a recording of a

or even testimony that the recordings are accurate and have not been altered. Moreover, when asked in his deposition whether he had ever recorded any conversations with anyone at work or with any current or former employees of Pentair, Plaintiff categorically denied ever doing so. Pl. Dep. 20:5-20[5].

Because no foundation has been laid for the recordings, other than Plaintiff's sham declaration contradicting his own deposition testimony, they are not admissible and the Court should disregard them.

### C. Defendant's Reply To Plaintiff's Response To Its Statement Of Uncontroverted Material Facts.

As stated above, most of Plaintiff's responses to Defendant's Statement of Uncontroverted Material Fact were repetitive, boilerplate responses that did not actually controvert the facts. For that reason, and to avoid repetition and ease review, Defendant has condensed its reply to each of the repetitive, boilerplate responses, while still identifying each fact addressed by the reply. Where Plaintiff's response was unique, Defendant has included the fact, response, and reply.

**DSOF ¶ 5:** On December 9, 2019, the Court dismissed Counts I, II, and III of Plaintiff's lawsuit. Doc. 29. The only remaining claim is Count IV, alleging Pentair discriminated against him in violation of Section 1981 by failing to promote him and subjecting him to disparate discipline. Doc. 29 at p. 12-13; Doc. 13 at Count IV.

---

meeting with Yolanda Villanueva, Keli Stewart, Steve Klaas, and Wanda Massie, the individuals on the recording can be heard referring to each other as "Mike," "Greg Tate," and "Tracy" as well as "union brothers and sisters." Recording 3 at 6:23, 6:58, 28:40, 1:11:44, 1:16:45.

[5] Attached as Exhibit 1 to Plaintiff's Opposition.

DISPUTED. Plaintiff asserts claims that he was denied employment opportunities, harassed, and subjected to a hostile work environment and that Pentair subjected Plaintiff to disciplinary action based on his race in violation of Section 1981. See pretrial order, ECF No 63.

**Defendant's Reply: Uncontroverted that Plaintiff originally asserted those claims. The Court's orders speak for themselves.**

**DSOF ¶¶ 15, 17, 18, 20, 21, 22, 23, 29, 30, 31, 32, 33, 34, 36, 37, 39, 41, and 42:** In his response to all of these facts, Plaintiff asserted the following identical allegation:

> New bargained for positions are not obtained through the traditional bid process but are offered through discriminatory apprenticeship at the direction of union leadership or Pentair management. Pl. Dep. 17:1-2, 17:22-24, 83:18-92:10, 94:15-95:2, 117:15-24, 125:10-127:3; Massie Decl.6 ¶¶ 8-24; Palmer Decl.7 ¶¶ 7, 10, 13-15; T. Ross Decl.8 ¶¶ 7-14; Recording 19 at 00:24-3:20; Recording 210 at 00:00-03:00.

**Defendant's Reply: The Court should disregard the allegations in Plaintiff's response. First, the response does not actually controvert the facts set forth by Defendant. Second, the allegations are not supported by admissible evidence. There are no facts to establish that the declarants have personal knowledge of the facts alleged. The recordings[6] submitted by Plaintiff are not admissible evidence because they were not authenticated.**

**DSOF ¶¶ 15 and 29:** In his response to these facts, Plaintiff asserted the following identical allegation:

> Pentair has a non-discrimination policy per the CBA that summarily states: "The Company recognizes that it or its agents shall not discriminate against any employee because of race in areas of recruitment, hiring, compensation, training and apprenticeship, promotion, upgrading, demotion, downgrading, transfer, lay-off and termination and all other terms and conditions of employment." Villanueva Dep. Ex. 43. Article III, Section 3 pp. 2-3.

---

[6] The submitted recordings were labeled 1, 2, and 3 so it is not clear what Plaintiff is referring to when he cites to "Recording 19" or "Recording 210." Moreover, although the recordings should not be considered by the Court, the beginning of Recording 1 the speaker clearly states he bid on the position.

**Defendant's Reply:** **The cited provision of the CBA does not controvert the facts set forth by Defendant.**

**DSOF ¶¶ 18, 20, 21, 22, 23, 29, 30, 31, 32, 33, 34, 36, 39, 41, and 42**: In his response to all of these facts, Plaintiff asserted the following identical allegation:

> Mike Cox ("Cox"), Phillip Brown ("Brown"), and William West ("West"), all Caucasian employees, were granted a positions they were not qualified for after they were approached by Ron Barner, who was a Caucasian operations manager of Pentair, and other members of management regarding whether or not they would be interested in the position. Cox and Brown were awarded positions on the same day they submitted job preference forms for jobs they either did not qualify for or would not have been the senior man to apply. West was not even required to submit a job preference form. The Kansas City, Kansas location has had approximately five or six apprenticeship opportunities in the past that have varied from person to person. Plaintiff reported he was being discriminated against because he was not given the opportunity to move to a job he was not qualified for like the Caucasians aforementioned. Two different plant managers told Plaintiff on numerous occasions he would not be considered for a repair position and machining position because he lacked the requisite experience also the Caucasian employees were allowed an apprenticeship when they lacked the requisite experience for positions they sought. Villanueva Decl. ¶9, 11-13, Tab 1-3; Pl. Dep. 55:24-56:24, ; Pl. Decl. ¶ 8-23; Massie Decl. ¶¶ 8- 25; Cox. Dep. 111:23-112:20, 113:23-115:20; Klaas Dep. 29:6-30:13.

**Defendant's Reply:** **The Court should disregard the allegations in Plaintiff's response. First, the response does not actually controvert the facts set forth by Defendant. Second, the allegations are not supported by admissible evidence. There are no facts to establish that the declarants have personal knowledge of the facts alleged.**

**Moreover, the testimony cited does not support Plaintiff's allegations. Klaas did not testify that *any* Caucasian employees received an apprenticeship. When asked whether William West received an apprenticeship, Klaas testified "I don't know anything about apprenticeship program back then" and went on to testify that in 2020 the company introduced a single apprenticeship program in the pump service group ("PSG"). Klaas**

**Dep. 45:20-46:13. He also testified:**

> **Q. And did William West receive an apprenticeship program?**
> **A. I can't say that he was an apprenticeship. I believe he was given on-the-job training. He bid on the job, that typically requires some previous training and experience. No one else was interested in taking the job. He had put in a bid, and the company decided to give him the opportunity to train.**

**Klaas Dep. 29:11-19. In addition, Cox testified that "the Kansas City plant currently has only one established apprenticeship program…there was no established apprenticeship program prior to the PSG one." Cox Dep. 115:13-20. Cox also testified he had no first-hand knowledge of West's alleged apprenticeship. Cox Dep. 114:3-13. Mike Cox, Steve Klaas, and Yolanda Villanueva testified that William West submitted a job preference form. Cox Dep. 113:24-114:10; Klaas Dep. 29:11-19; Villanueva Decl. ¶13. Plaintiff cited to no testimony supporting his allegation that Cox and Brown were awarded positions the same day they submitted bids; in fact the evidence in the record shows that is not the case. *See* DSOF ¶¶ 39, 41, 42; Villanueva Dec. ¶¶ 9-10, Tab 1.**

**DSOF ¶¶ 20, 22, 23, 29, 30, 31, 32, 33, 34, 39, 41, and 42:** In his response to all of these facts, Plaintiff asserted the following identical allegation:

> Plaintiff filed grievances and this lawsuit essentially because he was denied advancement and apprenticeship or training opportunities offered to similarly situated Caucasian employees but not offered to African American employees, such as Plaintiff. Supra at 18; Klaas Dep. 27:17- 30:13; Villanueva Dep. 17:16-21:2

**<u>Defendant's Reply:</u> Uncontroverted that Plaintiff filed a grievance alleging he was denied an apprenticeship.**

**The Court should disregard the remaining allegations in Plaintiff's response. First,**

**the response does not actually controvert the facts set forth by Defendant. Second, the cited testimony does not support the allegations. Klaas and Villanueva both testified that upon receiving Plaintiff's grievance, they investigated and determined Plaintiff did not receive any of the positions because he did not bid on them. Klaas Dep. 27:17- 30:13; Villanueva Dep. 17:16-21:2. There is no evidence whatsoever supporting Plaintiff's claim that the decision was race-based, and therefore he can cite to none.**

**DSOF ¶ 43:** Plaintiff testified that Paragraph 26 of his First Amended Complaint (alleging Plaintiff was singled out by management for performance standards and policy violations) is not true. Pl. Dep. 54:13-55:20. Plaintiff testified that it did not happen. *Id.*

> UNDISPUTED IN PART AND DISPUTED IN PART. It is undisputed Plaintiff testified that paragraph 26 of his amended complaint did not apply to him and that his petition contained several errors. However, Plaintiff also testified repeatedly he and another African American employee were arbitrarily targeted for discipline, performance, and safety violations. That other African American employee was ultimately terminated for alleged safety violations. Pl. Dep. 51:6-8, 78:9-25, Palmer Decl. ¶¶ 5-6, 24-30; Massie Decl. ¶¶ 22, 26-43; T. Ross Decl. ¶¶ 5-6, 17-20, 25-27; Recording 311 at 26:00-28:00.

**<u>Defendant's Reply</u>: The Court should disregard the allegations in Plaintiff's response. First, the response does not actually controvert the fact set forth by Defendant. Second, the allegations are not supported by admissible evidence. There are no facts to establish that the declarants have personal knowledge of the facts alleged. Plaintiff's conclusory allegations are not evidence that may be used to oppose summary judgment. The fact should be deemed admitted.**

**DSOF ¶ 44:** Plaintiff testified that Paragraph 30 of his First Amended Complaint (alleging Pentair started micromanaging Plaintiff and closely monitoring his performance and attendance) is not true. Pl. Dep. 63:19-64:11. The conduct alleged did not happen to Plaintiff. *Id.*

> UNDISPUTED IN PART AND DISPUTED IN PART. It is undisputed Plaintiff testified that paragraph 30 of his amended complaint did not apply to him and that his petition contained several errors. However, Plaintiff also testified repeatedly he and another African American employee was arbitrarily targeted for discipline, performance and safety violations. That other African American Employee was ultimately terminated for alleged safety violations. *See Id*.
>
> Plaintiff also testified he was being harassed regarding the amount of overtime he was permitted to work and, ultimately, lost the opportunity to continue to work substantial overtime which resulted in a loss of pay. Pl. Dep. 56:25-62:20. Plaintiff also testified that individuals were taking photos of his work at the direction of management in order to build a case of discipline in order to ultimately terminate his employment. Pl. Dep. 139:2-145:1.

**Defendant's Reply: The Court should disregard the allegations in Plaintiff's response. First, the response does not actually controvert the fact set forth by Defendant. Second, the allegations are not supported by admissible evidence. There are no facts to establish that the declarants have personal knowledge of the facts alleged. Plaintiff's conclusory allegations are not evidence that may be used to oppose summary judgment. Plaintiff's allegation that he "was being harassed regarding the amount of overtime he was permitted to work" is not supported by evidence in the record and the Court should disregard it. *See* DSOF ¶ 54. The fact should be deemed admitted.**

**DSOF ¶¶ 44, 45, 46, 49, 75, and 76:** In his response to all of these facts, Plaintiff asserted the following identical allegation:

> Plaintiff also testified individuals were taking photos of his work at the direction of management in order to build a case of discipline in order to ultimately terminate his employment. Pl. Dep. 139:2-145:1; Recording 3 at 02:20-12:20.

**Defendant's Reply: Uncontroverted that Plaintiff testified that in March 2019 co-workers were taking photos of work Plaintiff had performed, and that no discipline or other adverse action occurred as a result. Pl. Dep. 139:2-145:1, Dep. Ex. 18.**

**The Court should disregard the remaining allegations in Plaintiff's response. First, the response does not actually controvert the facts set forth by Defendant. Second, the allegations are not supported by admissible evidence as the recording was not authenticated and Plaintiff's conclusory allegations about his co-workers' motivations are not evidence that may be used to oppose summary judgment.**

**Moreover, the allegations are not material to Plaintiff's discrimination claim, as it has no bearing on whether Plaintiff was subject to an adverse employment action based on his race during the statutory period.**

**DSOF ¶¶ 45, 46, 49, 75, and 76:** In his response to all of these facts, Plaintiff asserted the following identical allegation:

> Management grew tired of Plaintiff making complaints related to discrimination and retaliation. Plaintiff also alleges management worked with union leadership to have him removed from his union steward position of 11 years. Plaintiff was not voted out by standard protocol but removed by union leadership at the direction of HR Manager Yolanda Villanueva. Pl. Dep. 121:11- 18, Klaas Dep. 24:13-25:5, 26:10-27:5, 34:18-35:25, 47:1-9; Cox Dep. 51:19-53:1.

**<u>Defendant's Reply:</u> The Court should disregard the allegations in Plaintiff's response. First, the response does not actually controvert the facts set forth by Defendant. Second, the allegations are not supported by the cited testimony.**

**Cox testified that he did not recall Villanueva or anyone in HR stating they were tired of Plaintiff filing grievances. Cox Dep. 149:11-150:9. Klaas also testified he did not remember Villanueva saying that. Klaas Dep. 26:10-18. Klaas testified that Plaintiff was removed from his steward position by the union committee during Klaas's term as president and Klaas had no knowledge of Villanueva being involved. Klaas Dep. 24:6-25:5, 34:12-35:25.**

**DSOF ¶ 46:** On or about February 15, 2016, Pentair received a report that Plaintiff got into a confrontation with supervisor Alec Vemmer and then-union president Aaron Janus. Pentair's HR department obtained statements from witnesses Alec Vemmer, Aaron Janus, Patrick Cassity, Paul DeNoon, Sr., Ronald Hunt, Jason Delana, and Tommy Jackson. Villanueva Decl. ¶ 14, Tab 4.

DISPUTED. Plaintiff never threatened Vemmer or Janus as falsely alleged and the disciplinary action was ultimately rescinded because it was based on false information but it continues to be in Plaintiff's disciplinary file. *Id*., Pl. Dep. 65:19-69:22, Villanueva Dep. 51:23-52:19; Cox Dep. 141:22-142:4, Stewart Dep. 61:2-64:19.

**<u>Defendant's Reply:</u> The Court should disregard the allegations in Plaintiff's response. First, the response does not actually controvert the fact set forth by Defendant. Second, the cited testimony does not support Plaintiff's assertion that the disciplinary action was based on false information. The fact should be deemed admitted.**

**DSOF ¶ 47:** The witnesses confirmed that Plaintiff was yelling, used profanity, and pointed his finger at Vemmer's chest. Id. Based on its investigation, Pentair decided to issue a disciplinary notice to Plaintiff. *Id*.

DISPUTED. *See Id*. at *Supra* 46.

**<u>Defendant's Reply</u>: *See* Defendant's Reply to DSOF ¶ 46. The fact should be deemed admitted.**

**DSOF ¶ 54:** Janus told Plaintiff that co-workers in assembly complained about the amount of overtime Plaintiff worked. No one else said anything to Plaintiff about the amount of overtime he worked. Pl. Dep. 57:17-58:3.

DISPUTED. Plaintiff also testified that he was being harassed and micromanaged regarding the amount of overtime he was permitted to work and ultimately lost the opportunity to continue to work substantial overtime which resulted in a loss of pay and an incident of sexual harassment where a white supervisor who was micromanaging Plaintiff followed him into the restroom. Plaintiff also testified during his deposition that he and another African American co-worker were being harassed and targeted for discipline, safety, and performance issues. Pl. Dep. 56:25-62:20, 73:10- 74:16, 78:9-25; Palmer Decl. ¶¶ 5-6, 24-30; Recording 3 at 42:30-44:50.

**Defendant's Reply: The Court should disregard the allegations in Plaintiff's response. First, the response does not actually controvert the fact set forth by Defendant. Second, the allegations are not supported by admissible evidence. There are no facts to establish that the declarants have personal knowledge of the facts alleged and the recordings lack foundation. Plaintiff's conclusory allegations are not evidence that may be used to oppose summary judgment. Plaintiff's allegation that he "was being harassed regarding the amount of overtime he was permitted to work" is not supported by evidence in the record and the Court should disregard it. *See* DSOF ¶ 54. *See also* Defendant's Response to PSOF ¶ 112. The fact should be deemed admitted.**

**DSOF ¶ 55:** Pursuant to the CBA, "overtime will be distributed equally among employees within each classification and labor grade, who can perform such work efficiently and without additional instruction. It is recognized that the division of overtime may become out of balance by the assignment of overtime work to particular employees, but at any one time it will be equalized within sixteen hours." Villanueva Dep. Ex. 43 at Article VI, Section 6, p. 10.

DISPUTED. *See Id.*

**Defendant's Reply: The Court should disregard the allegations in Plaintiff's response. First, the response does not actually controvert the fact set forth by Defendant. Second, the allegations are not supported by citations to admissible evidence. The fact**

**should be deemed admitted.**

**DSOF ¶ 56:** For that reason, "overtime records will be maintained on a continuous basis, and such overtime records will be available for inspection by the steward of the group involved or an appropriate member of the bargaining committee." Id.

DISPUTED. *Supra* at 54.

**Defendant's Reply: The Court should disregard the allegations in Plaintiff's response. First, the response does not actually controvert the fact set forth by Defendant. Second, the allegations are not supported by citations to admissible evidence. The fact should be deemed admitted.**

**DSOF ¶ 61:** Plaintiff does not know whether the issue reported to Janus was about the length of the lunch. Pl. Dep. 39:20-23. Janus did not say anything other than he had received calls complaining about the lunch. *Id*.

DISPUTED. The issue reported to management by several Caucasian employees was that Plaintiff and several other African American co-workers were celebrating Dr. Martin Luther King Jr.'s birthday. Pl. Dep. 30:15-16, 31:25-32:4.

**Defendant's Reply: The Court should disregard the allegations in Plaintiff's response because the cited testimony does not support the allegations. Plaintiff testified he had no first-hand knowledge regarding the issues reported to Janus. Pl. Dep. 28:2-29:3, 29:15-30:5, 32:5-22. The fact should be deemed admitted.**

**DSOF ¶ 65:** Pentair investigated the April 19, 2017 incident by interviewing Ross and Jackson as well as witnesses Nathan Flanery, Steve Squire, and Steve Klaas. Pentair obtained written statements from Squire and Klaas. Villanueva Dep. 101:17-103:12, Dep. Ex. 42; Klaas Dep. 66:1- 6, Dep. Ex. 54; Villanueva Decl. ¶17, Tab 5.

UNDISPUTED IN PART AND DISPUTED IN PART. It is undisputed Pentair interviewed the individuals aforementioned. However, there were other witnesses to the incident who did witness Jackson threaten to kill Plaintiff. Wanda Massie was present when Jackson threatened Plaintiff and heard what was said. However, Massie was never interviewed during the investigation. Massie Decl. ¶¶ 36-40, 42.

**<u>Defendant's Reply</u>: The Court should disregard the allegations in Plaintiff's response. First, Plaintiff's response does not controvert the fact. Second, there is no evidence in the record that Massie or anyone else alerted HR to the fact that Massie allegedly witnessed the incident. Villanueva Decl. ¶ 17, Tab 5.The fact should be deemed admitted.**

**DSOF ¶ 66:** The company could not corroborate Plaintiff's allegation that Jackson said "kill your ass" or otherwise threatened Plaintiff's life. *Id.* ¶¶ 17-18, Tab 5; Klaas Dep. 61:23:-63:14.

DISPUTED. Wanda Massie was present when Jackson threatened Plaintiff and heard what was said. However, Massie was never interviewed during the investigation. Pentair only interviewed the white employees. Massie Decl. ¶¶ 36-40, 42.

**<u>Defendant's Reply:</u> The Court should disregard the allegations in Plaintiff's response. First, Plaintiff's response does not controvert the fact. Second, there is no evidence in the record that Massie or anyone else alerted HR to the fact that Massie allegedly witnessed the incident. Villanueva Decl. ¶ 17, Tab 5.The fact should be deemed admitted.**

**DSOF ¶ 67:** After investigating, Pentair concluded that Mr. Jackson used profanity and threatening language toward Plaintiff when he called him "son of a bitch." Pentair therefore issued a disciplinary notice Mr. Jackson on April 24, 2017 for violating Rule of Conduct #18: Threatening, Intimidating, Coercing or Interfering with others. Villanueva Dep. 101:7-16, Dep. Ex. 41.

UNDISPUTED IN PART AND DISPUTED IN PART. It is undisputed Pentair's investigation concluded Jackson behaved in the manner described herein. However, there were other witnesses to the incident who did witness Jackson threaten to kill Plaintiff. Wanda Massie was present when Jackson threatened Plaintiff and heard what was said. However, Massie was never interviewed during the investigation. Massie Decl. ¶¶ 36-40, 42.

**Defendant's Reply: The Court should disregard the allegations in Plaintiff's response. First, Plaintiff's response does not controvert the fact. Second, there is no evidence in the record that Massie or anyone else alerted HR to the fact that Massie allegedly witnessed the incident. Villanueva Decl. ¶ 17, Tab 5.The fact should be deemed admitted.**

**DSOF ¶ 69:** Plaintiff wanted to be excused from safety meetings because Jackson was also required to attend. *Id.*

DISPUTED. Plaintiff asked to be excused because of fear for his life and safety due to the death threat and harassment by his co-workers, particularly Jackson. Plaintiff suffered emotional distress, anxiety, and fear which resulted in Plaintiff seeking a therapist who placed him on medication. Pl. Dep. 74:17-77:25, 136:2-19. Jackson had a history of disdain and contempt towards Plaintiff and the incident where Jackson was disciplined was just the boiling point for Jackson. Villanueva Decl. Tab 4. One of Plaintiff's co-worker was being bullied and harassed by a member of management at Pentair and the company took action to separate to two employees to prevent further incidents but the company took no action in this case. Pl. Dep. 74:17-77:25, 136:2-19; T. Ross Decl. ¶¶ 20- 24; Klaas Dep. 61:23-68:15.

**Defendant's Reply: The Court should disregard the allegations in Plaintiff's response. First, Plaintiff's response does not controvert the fact. Second, the cited evidence testimony does not support Plaintiff's assertions. Plaintiff testified "I have a problem being in meetings with Tommy Jackson" and also that Jackson has made no other threats toward him since the April 2017 incident. Pl. Dep. 77:13-78:8. The response is not supported by citations to admissible evidence, as there are no facts to establish the declarant has personal knowledge of the facts alleged. The fact should be deemed**

**admitted.**

**DSOF ¶ 70:** Everyone was required to attend the meetings as part of their job. Villanueva Dep. 53:25-55:21: Pl. Dep. 77:20-25.

DISPUTED. Employees miss the meetings all the time without consequence and it is not typically a big deal if an employee misses a meeting. T. Ross Decl. ¶ 26; Massie Decl. ¶¶ 38-40; Pl. Dep. 77:13- 19.

**Defendant's Reply: The Court should disregard the allegations in Plaintiff's response. First, Plaintiff testified that the expectation was that everyone on the shift would attend the daily safety meeting. Pl. Dep. 77:20-23. Second, the allegations are not supported by admissible evidence. There are no facts to establish that the declarants have personal knowledge of the facts alleged. The fact should be deemed admitted.**

**DSOF ¶ 73:** Jackson has made no other threats to Plaintiff since the April 19, 2017 incident. Pl. Dep. 78:5-8.

DISPUTED. Jackson had a history of disdain and contempt towards Plaintiff and the incident where Jackson was disciplined was just the boiling point for Jackson. Villanueva Decl. Tab 4.

**Defendant's Reply: The Court should disregard the allegations in Plaintiff's response. First, the response does not actually controvert the fact set forth by Defendant. Second, the citation to the record does not support Plaintiff's assertions. The fact should be deemed admitted.**

**D. Defendant's Responses To Plaintiff's Statement Of Additional Facts**

77. Pentair's Kansas City, Kansas location has approximately 250 employees total with approximately 125 working on the production floor as union employees. Stewart Dep. 10:4-

11:11, Villanueva Dep. 73:22-75:5.

      **Defendant's Response: Uncontroverted but immaterial**.

78.     Out of approximately 30 supervisors and managers in the entire plant, only one position is filled by an African American and only a handful of the employees in the entire plant are African American. Villanueva Dep. 73:22-75:5; Klaas Dep. 44:6-19, 93:17-94:21.

      **Defendant's Response:   The cited testimony does not support Plaintiff's assertion. Klaas testified that one out of six supervisors in the plant was African American. Klaas Dep. 43:6-12. Moreover, the allegation is not material to Plaintiff's discrimination claim, as it has no bearing on whether Plaintiff was subject to an adverse employment action based on his race.**

79.     Pentair has onsite HR personnel to handle grievances, investigations and discipline. Stewart Dep. 7:7-24.

      **Defendant's Response: Uncontroverted.**

80.     Grievances can either be written or verbal and the union president presents such grievances to HR. Villanueva Dep. 14:9-18.

      **Defendant's Response: Uncontroverted.**

81.     The union president typically brings grievances or concerns to management. Villanueva Dep. 61:11-20.

      **Defendant's Response: Uncontroverted.**

82.     The union president and other members of union leadership work very closely with HR and meet with HR several times a week. Stewart Dep. 12:12-14:18, 39:17-21; Cox Dep. 105:14-106:10.

      **Defendant's Response: The Court should disregard the allegations in paragraph 82**

**because the cited testimony does not support the allegations. Moreover, the allegation is not material to Plaintiff's discrimination claim, as it has no bearing on whether Plaintiff was subject to an adverse employment action based on his race.**

83. Not all complaints were brought to HR, but sometimes addressed by management, but claims of discrimination and retaliation should have been received by HR. Klaas Dep. 66:1-18; Cox Dep. 40:24-42:6, 90:2-94:24; Villanueva Dep. 15:9-16:21, Stewart Dep. 15:1-15.

**Defendant's Response: Uncontroverted but immaterial to Plaintiff's claim that he was subject to an adverse employment action based on his race.**

84. Whenever the company investigates something, the documents related to the investigation are kept in electronic format, not purged. Villanueva Dep. 26:24-27:9.

**Defendant's Response: Uncontroverted with regard to HR investigations that took place in Kansas City under Villanueva's tenure.**

85. The investigation was performed by site HR manager, Kelli Stewart. Villanueva Dep. 28:8-12; Stewart Dep. 7:18-8:11.

**Defendant's Response: Although it is unclear what investigation is being referenced, uncontroverted that HR generalist Keli Stewart investigated reports during her tenure at the Kansas City facility.**

86. Stewart was the onsite HR Manager for Pentair from September 2015 to May 2017 and never investigated any allegations or discrimination or retaliation even though it would have been her job to do so. Stewart Dep. 49:18-21.

**Defendant's Response: Uncontroverted that Stewart was the HR generalist on site during the time frame mentioned, and that Defendant did not complaint of discrimination during that time period. The Court should disregard the remaining allegations in**

**paragraph 86 because the cited testimony does not support the allegations. Moreover, the allegation is not material to Plaintiff's discrimination claim, as it has no bearing on whether Plaintiff was subject to an adverse employment action based on his race.**

87.     Pentair has a zero tolerance policy code of conduct that requires everyone to be treated fairly and equally. Villanueva Dep. 35:6-10; Stewart Dep. 53:11-13.

**Defendant's Response: Uncontroverted that Defendant has a zero tolerance policy with regard to violence.   The Court should disregard the remaining allegations in Paragraph 87 because they are not supported by the testimony cited.**

88.     It is Pentair's duty to provide a harassment free work environment. Cox Dep. 45:15- 46:19.

**Defendant's Response: Uncontroverted.**

89.     Several African American employees at Pentair have reported discrimination while working at Pentair including serious harassment and violence which involved someone being struck with a hammer but these complaints are not typically documented by Pentair. Cox Dep. 19:7-20:22, 22:7-13, 23:8-28:14, 90:2-91:14, 108:13-21; Klaas Dep. 76:10-77:3, 79:13-22.

**Defendant's Response:  The Court should disregard the allegations in Paragraph 89 because the cited testimony does not support Plaintiff's allegations. Cox and Klaas testified they have no personal knowledge of the Company's human resources' investigations. Moreover, the allegation is not material to Plaintiff's discrimination claim, as it has no bearing on whether Plaintiff was subject to an adverse employment action based on his race.**

90.     Pentair never conducted investigations regarding any of Plaintiff's nor any other African American employee's complaints of discrimination and retaliation including when

Pentair denied Plaintiff promotional opportunities. Villanueva Dep. 38:11-39:3, 59:16-22; Stewart Dep. 19:11-16, 39:14-16, 49:18-21; Klaas Dep. 40:18-41:3, 68:22-69:7; Cox Dep. 47:6-49:6, 90:16-19, 111:23-112:20.

**Defendant's Response:  The Court should disregard the allegations in paragraph 90. The cited testimony does not support Plaintiff's allegations.**

**With regard to Plaintiff's January 22, 2018 grievance alleging race discrimination Plaintiff did not controvert, nor can he, Defendant's SOF ¶ 34 regarding the investigation. Klaas testified that, from the union's perspective, "There really wasn't much of an investigation to make.  We have processes here for people to bid on jobs, and if you don't put in a bid, no one knows you're interested in the job.  That's the process." Klaas Dep. 40:18-41:3.  Cox testified that the union did not investigate, but that human resources did. Cox Dep. 90:16-19.  Stewart did not work for Defendant at the time.  *See* DSOF 27; PSOF 86.  Plaintiff did not controvert, nor can he, Defendant's SOF ¶ 34 regarding the investigation.**

91.     Management and HR grew tired of Plaintiff filing grievances for discrimination and retaliation. Cox Dep. 149:11-14; Recording 3 at 54:00-55:00.

**Defendant's Response:   The Court should disregard the allegations in Paragraph 91.  The recording is not admissible evidence because it lacks foundation. The cited deposition testimony does not support Plaintiff's assertion. Rather, Cox testified that he did not recall Villanueva or anyone in HR stating they were tired of Plaintiff filing grievances. Cox Dep. 149:11-150:9. Klaas also testified he did not remember Villanueva saying that. Klaas Dep. 26:10-18.**

92.     Plaintiff also alleges management worked in concert with union leadership to

remove Plaintiff from his union steward position of 11 years in retaliation for his complaints. Plaintiff was not voted out by standard protocol but removed by union leadership at the direction of HR Manager Yolanda Villanueva. Pl. Dep. 121:11-18, Klaas Dep. 24:6-25:5, 25:23-26:4, 26:10- 27:5, 34:18-35:25, 47:1-9, ; Cox Dep. 51:19-53:1, 119:25-121:10.

**Defendant's Response: The Court should disregard the allegations in Paragraph 92. The cited testimony does not support Plaintiff's assertions. Klaas testified that Plaintiff was removed from his steward position by the union committee during Klaas's term as president and Klaas had no knowledge of Villanueva being involved. Klaas Dep. 24:6-25:5, 34:12-35:25.**

93. Grievance paperwork is not to be thrown away although the union threatened to throw Plaintiff's grievance paperwork away. Cox Dep. 80:6-12; Klaas Dep. 32:11-18, 33:9-34:5.

**Defendant's Response: Uncontroverted that Klaas testified that in his capacity as union president he tried to explain to Plaintiff that Plaintiff could not file a grievance against the union and, during that conversation, said "I'll just throw it in the trash." The Court should disregard the remaining allegations in Paragraph 93 because they are not supported by the cited testimony.**

**Moreover, the allegations in Paragraph 93 related to conduct by the union are not material to Plaintiff's claims that Pentair took adverse action against him based on his race.**

94. Plaintiff is a good employee who has never had issues with discipline or his job performance. Villanueva Dep. 44:10-45:1; Cox Dep. 77:23-25; Klaas Dep. 23:24-25.

**Defendant's Response: Uncontroverted.**

95. Plaintiff alleged discrimination on numerous occasions. Klaas Dep. 16:12-16,

32:19-21; Cox Dep. 33:17-34:11.

**<u>Defendant's Response</u>: Uncontroverted that Cox testified Plaintiff "felt multiple times that he's been discriminated against."**

**The allegations in Paragraph 95 related to Plaintiff's conversations with the union are not material to Plaintiff's claims that Pentair took adverse action against him based on his race.**

96. Plaintiff alleged discrimination because he was not given an opportunity to apply for two positions as a pump repair machinist and impeller cell operator. Pl. Dep. 17:1-2, 17:22-24, 83:18-92:10, 94:15-95:2, 117:15-24, 125:10-127:3; Villanueva Dep. 17:20-18:10; Cox Dep. 111:23-112:20, 113:20-115:20, 123:13-124:12; Klaas Dep. 27:17-30:13; Pl. Decl. Tab 3, Ex. 50 & 52.

**<u>Defendant's Response</u>: Uncontroverted. *See* DSOF ¶ 34.**

97. Seniority, skillset, or work experience are taken into consideration when a job is being bid on. Villanueva Dep. 22:12-23:4

**<u>Defendant's Response</u>: Uncontroverted but immaterial, as Plaintiff did not bid on the positions in question. *See* DSOF ¶¶ 31-33.**

98. According to HR, the company does not offer apprenticeship opportunities despite testimony and paperwork stating otherwise. Villanueva Dep. 23:10-14; Stewart Dep. 39:25-40:7; Cox Dep. 111:23-112:20, 113:20-115:20, 123:13-124:12, 129:12-13

**<u>Defendant's Response</u>: Uncontroverted that the plant offered no apprenticeship programs at the time Plaintiff alleges he was interested in machinist positions, and that Defendant began offering a PSG apprenticeship program in 2020, which Plaintiff testified**

**he did not want. Pl. Dep. 129:6-130:11, Dep Ex. 27[7]; Klaas Dep. 45:24-46:13.**

99. However, the company has allowed approximately a half dozen Caucasian employees to receive an apprenticeship. Cox Dep. 111:23-112:20, 113:20-115:20; Pl. Dep. 83:18- 86:24; Klaas Dep. 45:1-46:13; Massie Decl. ¶¶ 8-15; T. Ross Decl. ¶¶ 9-14; Palmer Decl. ¶¶ 9, 13-14; Recording 1 at 00:24-3:20; Recording 2 at 00:00-03:00.

**<u>Defendant's Response</u>: The Court should disregard the allegations in paragraph 99. They are not supported by admissible evidence because there are no facts to establish that the declarants have personal knowledge about the facts alleged. The testimony cited does not support Plaintiff's assertion. Klaas did not testify that *any* Caucasian employees received an apprenticeship. When asked whether William West received an apprenticeship, Klaas testified "I don't know anything about apprenticeship program back then" and went on to testify that in 2020 the company introduced a single apprenticeship program in the pump service group ("PSG"). Klaas Dep. 45:20-46:13. He also testified:**

> **11 Q. And did William West receive an apprenticeship**
> **12 program?**
> **13 A. I can't say that he was an apprenticeship. I**
> **14 believe he was given on-the-job training. He bid**
> **15 on the job, that typically requires some previous**
> **16 training and experience. No one else was**
> **17 interested in taking the job. He had put in a**
> **18 bid, and the company decided to give him the**
> **19 opportunity to train.**

**Klaas Dep. 29:11-19. Cox testified "There was no established apprenticeship program prior to the PSG one." Cox also testified he had no first-hand knowledge of West's alleged apprenticeship. Cox Dep. 114:3-13.**

100. Two different plant managers told Plaintiff on numerous occasions Plaintiff

[7] Attached hereto as Exhibit F.

would not be considered for a repair positions and machining position because he lacked the requisite experience. This contrasts with Caucasian employees who were allowed an apprenticeship when they lacked the requisite experience for positions they sought. Pl. Decl. ¶¶ 15-23; Massie Decl. ¶¶16-24.

**Defendant's Response: *See* DSOF ¶¶ 24-46; Defendant's Reply to DSOF ¶¶ 15, 18.**

101. Sometime in 2015 Plaintiff went to Ron Barner, the operations manager at the time whose duties included approval for position changes, to inquire about being considered for a CNC machining position and Barner told Plaintiff he was ineligible for the position because Plaintiff lacked CNC experience. Pl. Dep. 83:18-85:8. Villanueva Dec. Tab 6; Klaas Dep. 29:20-30:13.

**Defendant's Response: The cited testimony does not support Plaintiff's allegation that Barner's duties included approval for position changes. Otherwise uncontroverted. *See* DSOF ¶¶ 24-26.**

102. Plaintiff also inquired with Ron Barner and Nathan Flanery about being considered for a CNC repair position around that same time and Barner and Flanery told Plaintiff he was ineligible because he lacked the requisite CNC experience despite Pentair's willingness to train Caucasian employees where they lacked the requisite experience of the offered position. Pl. Dep. 83:18-86:24; Massie Decl. ¶¶ 16-24; Palmer Decl. ¶¶ 14-23; Cox Dep. 111:23-112:20, 113:20- 115:20; Klaas Dep. 29:20-30:13.

**Defendant's Response: *See* DSOF ¶¶ 24-46; Defendant's Reply to DSOF ¶¶ 15, 18**

103. Plaintiff was visibly shaken by the incident with Jackson where Jackson threatened to kill Plaintiff which was aggressive and warranted termination. Villanueva Dep. 24:13-25, 118:6-25; Stewart Dep. 51:23-52:12, 68:14-69:20; Klaas Dep. 61:10-68:15; Massie

Decl. ¶¶ 36-41; Pl. Decl. Tab 1, Ex. 42.

**<u>Defendant's Response:</u> The Court should disregard the allegations in paragraph 103. First, they are not supported by the cited testimony. Second, they are not supported by admissible evidence because there are no facts to establish that the declarants have personal knowledge about the facts alleged.**

104. Pentair management and HR never interviewed Wanda Massie who was present when Tommy Jackson threatened to kill Plaintiff and witnessed the threat. Stewart Dep. 41:6-9, 70:18-24, Massie Decl. ¶ 42; Pl. Decl. Tab 1, Ex. 42

**<u>Defendant's Response:</u> The Court should disregard the allegations in Paragraph 104. The cited testimony does not support Plaintiff's allegations. There is no evidence in the record that Massie or anyone else alerted HR to the fact that Massie allegedly witnessed the incident. Villanueva Decl. ¶ 17, Tab 5**.

105. Plaintiff reported to management and HR that he felt that he was being harassed by Jackson, a co-worker, and was fearful of attending meeting where Jackson was present. Pl. Dep. 128:25-129:5; Villanueva Dep. 41:14-42:9, 57:23-58:5; Pl. Decl. Tab 1, Ex. 42

**<u>Defendant's Response:</u> The cited testimony and evidence does not support Plaintiff's assertion that he reported he was being harassed by Jackson, and the Court should disregard that allegations.**

106. Plaintiff asked to be excused because of fear for his life and safety due to the death threat and harassment by his co-workers, particularly Jackson. Plaintiff suffered emotional distress, anxiety, and fear which resulted in Plaintiff seeking a therapist and being placed on medication. Pl. Dep. 74:17-77:25, 136:2-19, Cox Dep. 135:17-136:5.

**<u>Defendant's Response:</u> The Court should disregard the allegations in Plaintiff's response. The cited evidence testimony does not support Plaintiff's assertions. Plaintiff testified "I have a problem being in meetings with Tommy Jackson" and also that Jackson has made no other threats toward him since the April 2017 incident. Pl. Dep. 77:13-78:8.**

107. Jackson had a history of disdain and contempt towards Plaintiff alleging Plaintiff has a "hate the white man racist attitude." The incident where Jackson was disciplined for threatening language was just the boiling point for Jackson. Villanueva Dep. 119:10-120:12; Villanueva Decl. Tab 4-5, Pl. Decl. Tab 1, Ex. 42.

**<u>Defendant's Response</u>: The Court should disregard the allegations in paragraph 107. The cited evidence does not support Plaintiff's assertion. *See* Defendant's Reply to DSOF ¶ 69.**

108. Another Pentair employee by the name of Tony Ross was being bullied and harassed by a member of management at Pentair and the company took action to separate to two employees to prevent further incidents. T. Ross Decl. ¶¶ 20-24.

**<u>Defendant's Response</u>: The Court should disregard the allegations in paragraph 108. The conclusory allegations made by the declarant, which simply echo allegations in his own Complaint, are not admissible evidence that can support Plaintiff's opposition to summary judgment. *See* Case No. Case 2:19-cv-02690-SAC-GEB at Doc. 10.**

109. Pentair took no action in this case to protect Plaintiff from Jackson or address his fears and concerns. Pl. Dep. 74:17-77:25, 136:2-19; Klaas Dep. 61:23-68:15; Villanueva Dep. 53:25-56:3; Pl. Decl. Tab 1, Ex. 40-42.

**<u>Defendant's Response</u>: The Court should disregard the allegations in paragraph 109. The cited evidence does not support Plaintiff's assertions.**

110. Plaintiff and Massie, who is also employed at Pentair as a union steward, claims Villanueva threatened to terminate him if he continued to voice his frustrations and concerns regarding discriminatory and retaliatory treatment but Villanueva denies this ever took place. Villanueva Dep. 56:10-13; Massie Decl. ¶¶ 26, 29; Recording 3 at 54:00-55:00.

**<u>Defendant's Response</u>: Uncontroverted that Villanueva denies she threatened to terminate Plaintiff's employment. The Court should disregard the remaining allegations in paragraph 110. The cited testimony does not otherwise support Plaintiff's assertions. The assertions are not supported by other admissible evidence because there are no facts to establish that the declarants have personal knowledge about the facts alleged, and because the recording lacks foundation. Plaintiff cannot rely on hearsay as evidence at summary judgment. *Argo v. Blue Cross & Blue Shield of Kansas, Inc*., 452 F.3d 1193, 1199 (10th Cir. 2006) ("at summary judgment courts should disregard inadmissible hearsay statements contained in affidavits").**

111. Plaintiff complained to management and HR that his personal information was being shared with co-workers who were upset about the amount of overtime Plaintiff was working which is a violation of policy but there is no documentation or evidence of Plaintiff's concerns ever being investigated. Cox Dep. 151:22-153:9; Pl. Dep. 57:5-63:18; Villanueva Dep. 42:16- 43:22.

**<u>Defendant's Response</u>: Uncontroverted that Plaintiff complained that information about his overtime hours was being shared but immaterial to Plaintiff's claim that he experienced adverse action based on his race. The remainder of the allegations in Paragraph 111 should be disregarded because they are not supported by admissible evidence. The cited testimony does not support Plaintiff's allegations.**

112. Plaintiff made a sexual harassment claim against a manager who was micromanaging him and followed him into the restroom but it was never investigated or if it was investigated possibly was lost. Villanueva Dep. 47:23-49:9, Stewart Dep. 49:18-21, 78:3-80:17; Pl. Dep. 74:10-16.

**<u>Defendant's Response</u>: Uncontroverted that Plaintiff complained of "sexual harassment" when a manager followed him into the restroom. The cited deposition testimony does not support Plaintiff's remaining assertions. Villanueva testified the matter was investigated, and that she sent a letter to Plaintiff stating that, after a thorough investigation had been conducted, the company did not find evidence to substantiate his allegation. Villanueva Dep. 47:23-48:10, 104:17-105:16, Dep. Ex. 44[8]. Moreover, the allegation is not material to Plaintiff's discrimination claim, as it has no bearing on whether Plaintiff was subject to an adverse employment action based on his race.**

113. Plaintiff reported that coworkers were taking photos of his work in hopes of having Plaintiff disciplined or terminated for performance issues at the direction of management. This was a violation of Pentair policy but no action was taken. Pl. Dep. 139:2-141:8; Klaas Dep. 55:3- 56:24; Cox Dep. 34:14-38:7, 42:15-43:7, 133:1-23; Villanueva Dep. 85:17-87:12; Recording 3 at 02:20-12:20.

**<u>Defendant's Response</u>: Uncontroverted that Plaintiff testified that in March 2019 co-workers were taking photos of work Plaintiff had performed, and that no discipline or other adverse action occurred as a result. Pl. Dep. 139:2-145:1, Dep. Ex. 18[9].**

**The Court should disregard the remaining allegations in Paragraph 113. First, the response does not actually controvert the facts set forth by Defendant. Second, the**

---

[8] Attached hereto as Exhibit G.

[9] *See* Exhibit F.

**allegations are not supported by admissible evidence as the recording was not authenticated and Plaintiff's conclusory allegations about his co-workers' motivations are not evidence that may be used to oppose summary judgment.**

**Moreover, the allegations are not material to Plaintiff's discrimination claim, as it has no bearing on whether Plaintiff was subject to an adverse employment action based on his race during the statutory period.**

114. Plaintiff along with several other coworkers also complained to management about the discriminatory practices of Pentair to drug test African American employees who are involved in work related accidents but not to test Caucasian employees who are involved in work related accidents. Pl. Dep. 80:8-83:2; Massie Decl. ¶ 43; Palmer Decl. ¶ 27; Cox Dep. 144:8-148:8, 154:1- 12.

**Defendant's Response: The allegation is not material to Plaintiff's discrimination claim, as it has no bearing on whether Plaintiff was subject to an adverse employment action based on his race.**

115. Typically, all employees involved in work related accidents are supposed to be sent for drug testing. Villanueva Dep. 77:21-78:16; Stewart Dep. 45:17-21.

**Defendant's Response: The allegation is not material to Plaintiff's discrimination claim, as it has no bearing on whether Plaintiff was subject to an adverse employment action based on his race.**

116. Plaintiff was falsely accused of improper behavior by the same individuals he reported were harassing him leading to disciplinary action being taken against him in error. Pl. Dep. 65:14-68:21, 132:3-7, 133:14-134:15; Stewart Dep. 63:22-65:15; Cox Dep. 141:24-142:22; Klaas Dep. 74:4-6; Pl. Decl. Tab 1, Ex. 42.

**<u>Defendant's Response</u>: The Court should disregard the allegations in Plaintiff's Paragraph 116. The cited testimony does not support Plaintiff's assertion that the disciplinary action was based on false information.**

117. Plaintiff was never given an opportunity to provide a statement nor was he interviewed before receiving erroneous discipline despite the fact a proper investigation should have taken place. Stewart Dep. 86:9-87:20; Pl. Decl. ¶ 40-42, Tab 1-3.

**<u>Defendant's Response</u>: The Court should disregard the allegations in Plaintiff's Paragraph 117. The cited testimony does not support Plaintiff's assertions. See DSOF ¶¶ 46-47.**

118. Disciplinary actions stay in a personnel file infinitely although it was supposed to be removed. Pl. Dep. 69:4-70:3, 132:23-133:10, 135:10-18; Villanueva Dep. 51:9-52:19; Stewart Dep. 63:22-65:15; Cox Dep. 141:24-142:22.

**<u>Defendant's Response</u>: The Court should disregard the allegations in Plaintiff's Paragraph 118. The cited testimony does not support Plaintiff's assertions. *See* DSOF ¶ 51.**

119. Some members of the union leadership are paid for their duties and union stewards are typically voted in or out by their department and have no limit to how long they can serve in that role. Cox Dep. 49:22-52:14.

**<u>Defendant's Response</u>: Uncontroverted but immaterial to Plaintiff's claim that he experienced adverse action based on his race.**

120. Plaintiff is losing $2-$3/hr. plus a lot of overtime in the amount of approximately eighteen hours a week because he was not given the position or apprenticeship as a machinist back in 2015 or 2016 up to the current date. Cox Dep. 124:18-128:11; Klaas Dep. 100:20-

101:16.

**<u>Defendant's Response</u>: The Court should disregard the allegations in Paragraph 120. The cited testimony does not support Plaintiff's allegation that he lost wages. Cox testified about the approximate earnings of machinists, but that fact is immaterial because Plaintiff never bid on the machinist positions at issue. *See* DSOF ¶¶ 33-34.**

121. Plaintiff lost substantial income when his overtime was cut after Caucasian employees began to monitor his timecard and complained about the amount of overtime Plaintiff was working. Pl. Dep. 57:5-63:18; Palmer Decl. ¶ 29.

**<u>Defendant's Response</u>: The Court should disregard the allegations in Paragraph 121. The cited testimony does not support Plaintiff's allegation that he lost wages. *See* DSOF ¶¶ 52-56.**

## II. ARGUMENT.

### A. There Is No Triable Issue of Fact on Plaintiff's Claim of Race Discrimination

The parties are in agreement that in order to establish a prima facie claim of race discrimination under 42 U.S.C. § 1981, Plaintiff must demonstrate that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Wilson v. Textron Aviation, Inc.*, 820 Fed.Appx. 688 (10th Cir. 2020) (affirming summary judgment dismissing plaintiff's allegations of discrimination and retaliation under § 1981 and Title VII); Opposition at 39. However, in an effort to survive summary judgment on his specious claims, Plaintiff cites to inapposite case law describing the standard for "adverse action" in retaliation claims established by the Supreme Court in *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006). Opposition at 41. Plaintiff's statement of the law in the Tenth Circuit omitted key language, apparently in an effort to muddy the waters. *See Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ*., 595 F.3d 1126, 1133 (10th Cir. 2010) ("The Supreme Court has held that an 'adverse action' ***for purposes of a retaliation under Title VII*** of the Civil Rights Act of 1964, 'is not limited to discriminatory actions that affect the terms and conditions of employment.'") (emphasis added).

In reality, in order to establish his prima facie case of race discrimination, Plaintiff must offer evidence that he suffered "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003).

Even if Plaintiff establishes a prima facie case of race discrimination, in order for his

claim to survive summary judgment, he also must point to evidence that Defendant's proffered legitimate, nondiscriminatory reason for the adverse action is pretextual. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (affirming summary judgment for employer in a Section 1981 race discrimination case). To do so, Plaintiff must produc[e] evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005) (affirming summary judgment for employer in sex discrimination claim) (internal quotations omitted).

**1. Defendant Did Not Remove Plaintiff From His Union Steward Position**

Plaintiff cannot establish a prima facie case of discrimination against Defendant based on his removal from the union steward role. The undisputed evidence is that the union and its members made the decision to remove Plaintiff from the union steward role, and Defendant played no part in that decision. DSOF ¶¶ 74-76. Because Plaintiff held that position with the union and was removed by the union, the removal was not an adverse employment action.

**2. Plaintiff's Claim of Discriminatory Discipline Cannot Survive Summary Judgment**

Plaintiff admits a single disciplinary action cannot constitute an adverse employment action unless it adversely affects to terms and conditions of employment. Opposition at 46. The undisputed evidence here is that Plaintiff received a single disciplinary action in February of 2016, and that Pentair does not consider prior disciplinary action after 12 months have passed, pursuant to the terms of the CBA. DSOF ¶¶ 48, 49, 51. It is also undisputed that Defendant provided Plaintiff with documentation that his disciplinary action was no longer active and

would not be considered in future disciplinary decisions. DSOF ¶ 51. The disciplinary action did not affect the terms and conditions of Plaintiff's employment and accordingly is not an adverse employment action under Section 1981.

Even if the single disciplinary action were an adverse employment action (it clearly is not), Plaintiff has not pointed to admissible evidence showing circumstances that give rise to an inference of discrimination. Plaintiff has not pointed to anyone outside the protected category who was treated more favorably. The undisputed evidence is that both Plaintiff and a Caucasian co-worker received disciplinary actions for violating Rule of Conduct 18. DSOF ¶¶ 64, 67.

Plaintiff seems to conflate the prima facie case with his burden to point to evidence of pretext at the third stage of the *McDonnell Douglas* framework, arguing the disciplinary action was discriminatory because he was "falsely accused of misconduct" and the discipline was issued "without giving him an opportunity to present evidence or provide an explanation." Opposition at 46. He can point to no evidence whatsoever that the allegations were false.

Even if he could, however, the pretext analysis considers only the facts as they appeared to the decision-makers. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007); *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1310 (10th Cir. 2017) (affirming summary judgment for defendant because "it ultimately is immaterial whether [the employer's] belief was actually correct . . . what matters is that [the employer] honestly held that belief and acted on it in good faith") (internal quotation omitted). Here, Defendant's investigation into the incident that resulted in the disciplinary action issued to Plaintiff revealed evidence, including witness statements, that Plaintiff violated Rule of Conduct 18. DSOF ¶¶ 46-47. Because Defendant acted in good faith based on the results of its investigation, Plaintiff cannot show Defendant's reasons for issuing the discipline were pretextual.

**3. There Is No Evidence Plaintiff Was Denied Overtime Based on Race**

Plaintiff argues that "denial of overtime opportunities" constitutes an adverse employment action. Opposition at 44. Although the Tenth Circuit has found denial of overtime opportunities to be an adverse employment action under the broader definition in retaliation cases, it is not clear that it is a materially adverse action that would satisfy the standard in a discrimination case. *See Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir.2010) (finding, in the context of a retaliation claim, that denial of overtime opportunities constituted adverse employment action); *Schamber v. City & Cty. of Denver, No.* 10-CV-01237-CMA-MJW, 2011 WL 6749802, at *5 (D. Colo. Dec. 23, 2011) ("the Tenth Circuit has found that a defendant's denial of overtime opportunities ***may*** constitute an adverse employment action") (emphasis added).

Here, however, Plaintiff has pointed to no circumstances giving rise to an inference of discrimination. He argues that he was denied overtime "after several white co-workers and managers began to monitor the amount of overtime he was permitted to work." Opposition at 44. It is undisputed that overtime records were available for inspection by union stewards and officers and that the CBA required overtime to be distributed equally among employees within each classification and labor grade. DSOF ¶¶ 55-56. It follows that co-workers would be aware of Plaintiff's overtime hours and that hours would be monitored to ensure even distribution – otherwise the provisions of the CBA would be totally ineffective. The fact that those co-workers were white is not a circumstance giving rise to an inference of discrimination.

For the same reasons, Plaintiff cannot show that Defendant's reason for denying Plaintiff overtime was pretextual. Defendant was acting consistent with the terms of the CBA in ensuring even distribution of overtime. Plaintiff has pointed to no admissible evidence suggesting

Defendant's proffered reason for reducing Plaintiff's overtime opportunities was false. Plaintiff plainly cannot establish pretext by citing his own belief that the decision was discriminatory. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1170 (10th Cir. 1998) (granting summary judgment where plaintiff's opinion that discrimination was pervasive was "mere conjecture" and insufficient to establish pretext)

**4. Plaintiff's Failure to Hire Claim Cannot Survive Summary Judgment Because the Undisputed Evidence Shows Plaintiff Did Not Apply**

The undisputed evidence shows that Plaintiff was not selected for the machinist positions at issue *because he did not submit a bid* for those positions. DSOF ¶¶ 31-34. The undisputed evidence also shows that all of the Caucasian employees who were selected for the positions *did submit bids.* DSOF ¶¶ 35-42. This fact is fatal to Plaintiff's failure to hire claim.

To establish a *prima facie* claim for failure to hire or failure to promote under 42 U.S.C. § 1981, Plaintiff must demonstrate that (1) he belongs to a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, Plaintiff was rejected; and (4) after his rejection, the position remained open and Defendant continued to seek applicants from persons with Plaintiff's qualifications. *See Brown v. Keystone Learning Services*, 2018 WL 6042592, at *6 (D. Kan. Nov. 19, 2018) (citing *Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005), and dismissing Plaintiff's § 1981 and Title VII failure-to-hire claims on summary judgment). Because Plaintiff by his own admission did not follow the company's process for submitting a bid on the positions in question, he cannot establish a prima facie case.

Even if he could establish the elements of his claim, Plaintiff's failure to hire claim cannot survive summary judgment because Plaintiff has not pointed to any evidence whatsoever that Defendant's explanation is "unworthy of belief." *Kendrick v. Penske Transp. Servs., Inc.*,

220 F.3d 1220, 1230 (10th Cir. 2000) (affirming summary judgment for employer in a Section 1981 race discrimination case).  It is undisputed that the CBA set forth a procedure for submitting bids (DSOF ¶¶ 16-18), that Plaintiff failed to follow that procedure, and that the individuals selected for the roles did follow that procedure.  In other words, the key difference between the individuals selected and Plaintiff is not race – it is the fact that they submitted bids whereas Plaintiff did not.

Plaintiff places undue significance on his allegation that the individuals selected were offered "apprenticeships" despite not having the requisite qualifications for the positions. Defendant admits that some of the individuals selected, including William West, were not qualified bidders and were offered on-the-job training when there were no qualified bidders. DSOF ¶¶ 17, 35-42.   Had Plaintiff submitted a bid, his admitted lack of qualifications for the positions could have led to the same result.  But, he did not do so.

Defendant's legitimate, nondiscriminatory reason for not awarding Plaintiff the machinist positions in question is that Plaintiff did not submit a bid for those positions.  Plaintiff has put forth no evidence whatsoever that Defendant's explanation is unworthy of belief. Defendant followed the terms of the CBA when it made its hiring decisions based on bids submitted, and has been consistent it its explanation of that decision. DSOF ¶ 34.   When Plaintiff filed a grievance regarding the positions, Defendant investigated and then explained to Plaintiff that the reason he had not been selected was his failure to bid.   DSOF ¶ 34.

Plaintiff cannot establish a prima facie case of failure to hire, and there is no triable issue of fact with regard to his claim.  Defendant is therefore entitled to summary judgment on Plaintiff's failure to hire claim.

**B. The Undisputed Evidence Shows That Plaintiff Was Not Subjected To A Hostile Work Environment.**

Plaintiff's hostile work environment claim fails as a matter of law because, even when viewing the facts in the light most favorable to him, Plaintiff has failed to establish that his workplace was "permeated with discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment.'" *Shaw v. Tulsa Dynaspin Arrow Concrete*, 408 F. App'x 177, 179 (10th Cir. 2011), quoting *Sandoval v. City of Boulder, Colo*., 388 F.3d 1312, 1326-27 (10th Cir. 2004); *Yang v. Lakewood Mgmt., L.L.C*., 918 F. Supp. 2d 1205 (D. Kan. 2013). Moreover Plaintiff has pointed to no evidence whatsoever that any alleged harassment was based on race.

Even if accepted as true, the undisputed facts show Plaintiff's allegations do not rise to the level of a hostile work environment. Plaintiff alleges three specific incidents during the relevant four-year statutory period.[10]

First, Plaintiff alleges that in 2015, management shared information about his overtime hours with his co-workers. DSOF ¶ 52. In reality, as set forth above, the CBA that governs Plaintiff's employment with Pentair requires that Pentair record the overtime hours worked by bargaining unit employees and make that information available in order to ensure overtime is evenly distributed. The undisputed evidence is that Plaintiff was not subject to any other harassment regarding overtime hours. DSOF ¶ 54.

Second, Plaintiff alleges that in January 2016, employees complained to the union president about a Marin Luther King, Jr. Day lunch celebration. (DSOF ¶¶ 57-59). Plaintiff has no evidence to suggest that any such complaints were race-based, as opposed to being based on the additional 30 minutes of lunch taken by attendees at the lunch. (DSOF ¶ 61). In any event,

[10] The alleged photos of Plaintiff's work are outside the statutory period and are not properly a part of his claim.

Plaintiff testified that the situation was resolved immediately and the celebration went on as planned.  (DSOF ¶ 62).

Finally, Plaintiff alleges that in April 2017, another employee "threatened his life" and that Pentair took no action. (DSOF ¶ 63).  In reality, when Plaintiff reported the confrontation with Jackson, Pentair conducted a thorough investigation and was unable to corroborate Plaintiff's claim that his life was threatened.  (DSOF ¶¶ 63, 65-66).  Because Pentair was able to corroborate that Jackson was confrontational and used profanity, Pentair took appropriate disciplinary action and issued Jackson a final warning for violating Rule of Conduct #18: Threatening, Intimidating, Coercing, or Interfering with Others. (DSOF ¶ 67).   Plaintiff has not had any issues with Jackson since the time of the alleged threat in April 2017.  (DSOF ¶ 73).

Notably, Plaintiff has pointed to no evidence whatsoever to suggest any of the alleged harassment was "racial or stemmed from racial animus." *See Witt*, 136 F.3d at 1432 (10th Cir. 1994).  He has pointed to only 1) the fact that the alleged perpetrators were white, and 2) his own subjective belief that the "environment was racially hostile."  Plaintiff's subjective belief is not admissible evidence the Court can consider at summary judgment.

Plaintiff has not established that he was subjected to severe or pervasive harassment, nor has he established that the harassment he alleges was based on his race. As such, he cannot establish the third or fourth elements of his harassment claim.  There is no triable issue of fact and Defendant is entitled to judgment as a matter of law.

## III.    CONCLUSION

Even assuming the truth of Plaintiff's allegations, his claims fail as a matter of law for the reasons set forth above, and within Defendant's initial Suggestions in Support of Its Motion for Summary Judgment. Defendant respectfully requests that the Court grant its Motion and enter judgment for Defendant on all Counts.

.

Respectfully submitted,

*/s/ Sara K. McCallum*

Jeffrey M. Place, KS #17977
Sara K. McCallum, KS #26690
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jplace@littler.com
smccallum@littler.com

ATTORNEYS FOR DEFENDANT
PENTAIR FLOW TECHNOLOGIES, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice to the following:

Gerald Gray, II
G. GRAY LAW, LLC
104 W. 9th Street, Suite 401
Kansas City, MO 64105
ggraylaw@outlook.com

ATTORNEY FOR PLAINTIFF

*/s/ Sara K. McCallum*
Attorney for Defendant