## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**GARY ALLEN ROSS,**

      **Plaintiff,**

      **v.**

**PENTAIR FLOW TECHNOLOGIES, LLC, et al.,**

      **Defendants.**

**Case No. 2:18-cv-02631-HLT**

## MEMORANDUM AND ORDER

Plaintiff Gary Ross works as an assembler at Defendant Pentair Flow Technologies, LLC. He claims Defendant racially discriminated against him by denying him employment opportunities, denying him overtime, removing him from his union steward position, and subjecting him to discriminatory discipline. Plaintiff also claims Defendant harassed Plaintiff and subjected him to a hostile work environment. Defendant moves for summary judgment. Doc. 64. The Court finds that summary judgment is warranted on all claims <u>except</u> Plaintiff's race discrimination claim concerning the denial of employment opportunities. The Court therefore grants in part and denies in part the motion.

## I.    BACKGROUND[1]

Plaintiff is African American. He began working at Defendant's Kansas City, Kansas facility in September 1994 as a painter. He remains employed by Defendant and is currently in an

---

[1]   The background and analysis contain the properly supported and not genuinely disputed facts and recites those facts in the light most favorable to Plaintiff as the non-moving party. Determining these facts was complicated by Plaintiff's repetitive and at times argumentative approach. Many of Plaintiff's responses and additional statements of fact were not supported by the record; many of Plaintiff's attempts to controvert Defendant's fully supported factual statements merely sought to add additional unsupported facts; and many of Plaintiff's responses were copied and pasted repeatedly throughout Plaintiff's brief. *See* D. Kan. Rule 56.1(a).

assembler position. Plaintiff is a member of the union and his employment is governed by a collective bargaining agreement ("CBA"). Mike Cox became union president in April 2018. Before Cox, Steve Klaas served as president beginning in 2016 to April 2018. Before Klaas, Aaron Janus was union president. Until January 2018, Plaintiff served as a union steward representing the workers in his department on overtime issues, disciplinary actions, and other issues. In this role, he consulted the CBA to represent the workers in his department.

The operative CBA was between Defendant's Kansas City facility and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union. The CBA contains the following job award procedure:

a) The company must advise the union president of a job opening 24 hours prior to awarding the job.

b) Each employee who desires to be considered for a job opening shall complete the Job Preference Form available in the rack by the bid box.

c) Job Preference Forms when completed shall be deposited in the bid box.

d) An employee desiring to submit or change a Job Preference Form may do so any time prior to the time the Job Awards Committee convenes.

e) Job Preference Forms will be collected by the Union President or his designated representative.

f) Job Preference Forms will then be reviewed by the Job Awards Committee to determine eligibility and qualifications of employees to be considered for job openings.

g) When there are qualified bidders – meaning employees who can fulfill the minimum requirements of the job, length of continuous service, or seniority, governs the award of jobs.

h) When there are no bidders who can demonstrate they meet the minimum requirements of the job, the job can be

> awarded to a nonqualified bidder, and "a reasonable trial period shall be afforded to determine whether the employee possesses the minimum requirements of the job."

Plaintiff moved from the painter position into the assembler position by filling out a Job Preference Form, or "bid sheet," and placing it in the bid box. The CBA's job award procedure has not changed since Plaintiff successfully bid on his assembler position.

### A.     Job Bid History

In 2015, Plaintiff told plant operations manager Robert Barner about his interest in a CNC machinist position. Barner told Plaintiff that he was ineligible for the position because he lacked CNC experience. Plaintiff also told Barner and Nathan Flanery about his interest in a repair machinist position, and they told Plaintiff that he was ineligible because he lacked CNC experience.  Plaintiff did not submit a Job Preference Form for either position.

A few years later, Plaintiff filed a January 22, 2018 grievance stating:

> About a year ago, I requested to be put in a machinist position. I was refused due to lack of experience. Recently, about six months ago, another individual applied for a similar position and was offered an apprenticeship for that position. I was not made aware of or offered the opportunity to under the apprenticeship. It seems that I was not offered this opportunity due to the color of my skin.

After receiving Plaintiff's grievance, Cox and human resources manager Yolanda Villanueva reviewed the submitted Job Preference Forms for the positions Plaintiff complained about not receiving. They then met with Plaintiff and explained the reason he did not get the positions was because he did not turn in a Job Preference Form for the positions—i.e., he had not applied.

William West is the person referred to in Plaintiff's 2018 grievance. West bid on an Impeller Cell Operator machinist position in May 2017. West had no experience as a machinist at the time. There were no qualified bidders for the position and West was the senior non-qualified bidder and was awarded the position on a trial (trainee) basis.

Plaintiff also identifies other "non-African-American" employees relevant to his failure-to-hire claim. These individuals are Cox and Phil Brown. Cox submitted a bid for an Impeller Cell Operator position on August 14, 2012. As the senior non-qualified bidder, he was awarded the position on a trial basis as a trainee on August 17, 2012. Since that time, Cox has successfully bid to CNC Operator and CNC Machine Center Operator positions. Brown submitted a bid for an Impeller Cell Operator position on January 30, 2015, and, as the senior qualified bidder, was awarded the position on February 11, 2015. Brown submitted a bid for an Assembly Repair Machinist position on May 21, 2018, and, as the senior qualified bidder, was awarded the position on May 28, 2018.

### B. Overtime Hours

Plaintiff alleges that in 2015 his supervisor Patrick Cassity and then-union president Janus began sharing information with his co-workers about the amount of overtime Plaintiff worked. Janus then told Plaintiff that coworkers in assembly complained about the amount of overtime Plaintiff worked. No one else talked to him about the amount of overtime he was getting.[2]

The CBA states that:

> [O]vertime will be distributed equally among employees within each classification and labor grade, who can perform such work efficiently and without additional instruction. It is recognized that the division of overtime may become out of balance by the

---

[2]    At various points in his motion, Plaintiff cites to three audio recordings for support. Plaintiff claims two of the recording involve a conversation with a coworker who admits he was offered an apprenticeship opportunity by management. Plaintiff claims the third recording is from a grievance hearing with Villanueva, Klaas, Wanda Massie, and Kelli Stewart. Defendant objects to these recording because Plaintiff does not authenticate them and lay a proper foundation. *United States v. Cook*, 794 F.2d 561, 567 (10th Cir. 1986). The Court reviewed the recordings and understands Defendant's frustration that Plaintiff is offering recordings after he denied making any recordings during his deposition. Doc. 68-1 at 5. Plaintiff also fails to lay any foundation for these recordings and does not state the time, date, or manner of recording. Additionally, the speakers in the third recording are identified as "Mike," "Greg Tate," "Tracy," and "union brothers and sisters," which is inconsistent with Plaintiff's description in his declaration. Although Plaintiff may ultimately be able to authenticate the recordings for admission at trial, he has failed to do so at this stage. Accordingly, the Court sustains Defendant's objections to the recordings. But, even if the Court considered the recording, they do not change the outcome of this motion.

> assignment of overtime work to particular employees, but at any one
> time it will be equalized within sixteen hours.

The CBA also states that "overtime records will be maintained on a continuous basis, and such overtime records will be available for inspection by the steward of the group involved or an appropriate member of the bargaining committee."

### C. Disciplinary Actions

On or about February 15, 2016, Defendant received a report that Plaintiff got into a confrontation with supervisor Alec Vemmer and then-union president Janus. Defendant's human resources department obtained statements from witnesses Janus, Cassity, Vemmer, Paul DeNoon, Sr., Ronald Hunt, Jason Delana, and Tommy Jackson. The witnesses confirmed that Plaintiff was yelling, used profanity, and pointed his finger at Vemmer's chest. Based on its investigation, Defendant issued a disciplinary notice to Plaintiff on February 19, 2016 for violating Rule of Conduct #18: Threatening, Intimidating, Coercing, or Interfering with Others. This is the only disciplinary action Plaintiff received from November 21, 2014 through July 26, 2019. On December 14, 2018, Plaintiff received a letter signed by the union president and human resources confirming the February 19, 2016 disciplinary action was removed from his file and would not be used when making any future disciplinary decisions concerning Plaintiff.[3]

About a year later, on April 19, 2017, Plaintiff reported to Defendant that fellow union member Jackson, who is Caucasian, threatened Plaintiff's life and "his report was ignored." Defendant investigated the incident by interviewing Plaintiff and Jackson as well as witnesses Flanery, Klaas, and Steve Squire. Defendant obtained written statements from Squire and Klaas. Defendant could not corroborate Plaintiff's allegation that Jackson said "kill your ass" or otherwise

---

[3]   Plaintiff attempts to controvert this statement by arguing that disciplinary actions stay in a personnel file infinitely. Doc. 68 at 37. However, the cited testimony does not support this claim.

threatened Plaintiff's life. After investigating, Defendant concluded that Jackson used profanity and threatening language toward Plaintiff when he called him "son of a bitch." Defendant issued a disciplinary notice to Jackson on April 24, 2017 for violating Rule of Conduct #18.

A few months later, in June 2017, Plaintiff filed a grievance regarding his supervisor's directive that Plaintiff was required to attend safety meetings after Plaintiff missed some of those meetings.  Everyone attended these meetings. Plaintiff wanted to be excused from safety meetings because Jackson was also required to attend. Plaintiff also requested that Defendant inform him how the investigation of the April 19, 2017 incident was resolved. Defendant granted Plaintiff's request in part and informed Plaintiff that Jackson was given a final written warning for violating Rule of Conduct #18 but denied Plaintiff's request that he not be required to attend safety meetings. Jackson has made no other threats to Plaintiff since the April 19, 2017 incident.[4]

## II.    STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[4]    Plaintiff attempts to controvert this statement of fact by arguing that Jackson had a history of disdain and contempt towards Plaintiff and the incident where Jackson was disciplined was just the boiling point for Jackson. Doc. 68 at 30. But Plaintiff does not cite any evidence that Jackson has made any threats to Plaintiff since April 19, 2017.

### III.     ANALYSIS

Plaintiff brings claims for race discrimination and a racially hostile work environment under 42 U.S.C. § 1981.[5] Doc. 63 at 6. Plaintiff contends Defendant racially discriminated against him by denying him employment opportunities, denying him overtime, removing him from his union steward position, and subjecting him to discriminatory discipline. Plaintiff also claims Defendant harassed Plaintiff and subjected him to a hostile work environment. Defendant contends it is entitled to summary judgment on all Plaintiff's claims because no reasonable jury could find for Plaintiff. The Court examines each claim.

#### A.     Race Discrimination

Section 1981 prohibits race discrimination in the workplace. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221 (10th Cir. 2015). The same standards apply in § 1981 cases as in cases brought under other anti-discrimination statutes, including the *McDonnell Douglas* burden-shifting framework. *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1168 (10th Cir. 2018).

Under this framework, a plaintiff must first demonstrate a prima facie case of discrimination by establishing: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) that the circumstances give rise to an inference of discrimination. *See EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). If plaintiff can make that showing, the burden shifts to the employer to give a legitimate, non-discriminatory reason for the employment decision. *Payan*, 905 F.3d at 1168. The burden then shifts back to plaintiff to show that the stated reason is merely a pretext for discrimination. *Lounds*, 812 F.3d at 1221-22. A plaintiff may demonstrate pretext by pointing to facts that a factfinder could rely on to conclude

---

[5]   The Court's recitation of the claims in this action are based on the September 29, 2020 Pretrial Order, which supersedes the pleadings and controls the course of this case going forward. Doc. 63. The Court notes that, although Plaintiff's amended complaint asserted a claim for retaliation, Plaintiff has since abandoned that claim. *Id.* at 6.

that the stated reason for the adverse employment action is unworthy of belief. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). This can be done by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the stated reason. *PVNF*, 487 F.3d at 801 (quotation omitted).

### 1.      Denial of Employment Opportunities

To establish a prima facie case of racial discrimination stemming from a failure to hire or failure to promote under Section 1981, a plaintiff must demonstrate that (1) he belongs to a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, the plaintiff was rejected; and (4) after his rejection, the position remained open and the defendant continued to seek applicants from person's with the plaintiff's qualifications. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005). Defendant argues that Plaintiff lacks evidence of the second element because it is undisputed that he did not submit a Job Preference Form for the two machinist positions. Doc. 65 at 15-16. Defendant also contends that Plaintiff cannot establish that he was qualified to bid on at least one of the positions in question.

On the first issue, Plaintiff concedes that he did not submit a Job Preference Form for the machinist positions but argues that the official job award procedure was not always followed and that there was an alternative and acceptable process for submitting a bid. Plaintiff explains that it was an acceptable practice for bidding a position to contact a supervisor, manager, or member of the union and express interest in a position. He told Barner about his interest in the CNC machining position and told Barner and Flanery about his interest in the repair machinist position. Plaintiff argues that this was an acceptable practice for bidding on the positions.

To support his argument, Plaintiff submits the declaration of three coworkers.[6] Each declaration notes that: (1) employees interested in bidding for a position typically notifies a supervisor, manager, or a member of the union leadership and the person's name is submitted, (2) each declarant has taken the same steps as Plaintiff when he or she changed various positions in the past, and (3) Plaintiff's contacting a supervisor, manager, or member of union leadership to express his interest in the machinist positions is an acceptable process for submitting a bid at Defendant. Doc. 68-6 at 2-3; Doc. 68-8 at 2-3; and Doc. 68-9 at 2-3. Based on the record and these declarations, Plaintiff has shown a genuine issue of material fact about whether a Job Preference Form is required to bid a position. A reasonable jury could find that Defendant had an alternative and acceptable method for submitting a bid and that Plaintiff complied with it by expressing his interest in the machinist positions to Barner and to Flanery.

On the second issue, Plaintiff again concedes that he did not have CNC experience. But the CBA allows for employees who lack experience to apply for positions and includes an award process when there are no qualified bidders. Plaintiff identifies West and Cox as individuals who were not qualified but were still awarded positions. Plaintiff contends that he was the senior nonqualified bidder for the two machinist positions, but Defendant awarded the positions to nonqualified and less senior Caucasian employees. Doc. 68 at 45-46; *see also* Doc. 68-7 at 4. Based on the record, Plaintiff has demonstrated a genuine issue of material fact about whether his lack of experience prevented him from being awarded the machinist positions. A reasonable jury could

---

[6] Plaintiff offers the sworn declarations of Anthony Palmer, Wanda Massie, and Tony Ross. Defendant argues that the declarations are not based on personal knowledge. Under the personal knowledge standard, an affidavit is inadmissible if "the witness could not have actually perceived or observed that which he testifies to." *Argo v. Blue Cross Blue Shield*, 452 F.3d 1193, 1200 (10th Cir. 2006). The Court agrees that the portions of the declaration do not appear to be supported by personal knowledge. But the portions relevant to Plaintiff's failure to hire claim are supported by personal knowledge. Each declarant claims to have "taken the same steps" as Plaintiff—i.e., bid on a position simply by expressing interest to a supervisor and not filling out and submitting a Job Preference Form— and therefore have personal knowledge of the informal bidding procedure.

find that Plaintiff could have been awarded the machinist positions despite his lack of CNC experience.

Defendant next argues that it is still entitled to summary judgment because it has a legitimate non-discriminatory reason for not hiring Plaintiff (i.e., Defendant followed the CBA process, Plaintiff did not submit a Job Preference Form, and Plaintiff lacked CNC experience) and Plaintiff is unable to show pretext. Plaintiff again points to the alternative and acceptable practice for submitting bids, the express process for awarding positions to non-qualified bidders, and the non-qualified and less senior Caucasian employees awarded the machinist positions. Plaintiff also describes an apprenticeship program to provide on-the-job training that was available to Caucasian employees who expressed interest in a position for which they were not qualified but that was not available to African American employees. Defendant denies the existence of an apprenticeship program and argues that Plaintiff is conflating it with the trial/trainee basis outlined in the CBA. But Plaintiff has come forward with evidence supporting his arguments. *See* Doc. 68-9 at 2 (discussing apprenticeship program); Doc. 68-3 at 30 (Cox testifying that West was not qualified for a position but was granted an apprenticeship and that a total of five or six apprenticeship opportunities have been given at the Kansas City location).

Plaintiff's overall theory is that Defendant had a process for awarding positions that allowed individuals to make requests to a manager, supervisor, or member of union leadership. When Plaintiff expressed interest, he was told that his lack of experience precluded him from consideration. But the same was not true for Caucasian employees. Caucasian employees would still be considered, awarded the position, and provided some form of training. Plaintiff has come forward with evidence to support this theory, and a reasonable jury could find in his favor based

on the record. The Court denies summary judgment on Plaintiff's race discrimination claim concerning denial of employment opportunities.

## 2.    Denial of Overtime Opportunities

Plaintiff next alleges racial discrimination based on his denial of overtime opportunities. To establish a prima facie case Plaintiff must show: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) that the circumstances give rise to an inference of discrimination. *See EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). Defendant argues that Plaintiff cannot show circumstances giving rise to an inference of discrimination.

The Court agrees that Plaintiff has not shown an inference of discrimination. Plaintiff argues that he was denied overtime after "several white co-workers and managers began to monitor the amount of overtime he was permitted to work." Doc. 68 at 47. But it is uncontroverted that overtime records are available for inspection by union stewards and officers and that the CBA required overtime to be distributed equally among employees within each classification and labor grade. Thus, it logically follows that coworkers would be aware of Plaintiff's overtime hours and that hours would be monitored to ensure even distribution. The fact that those coworkers may have been Caucasian is not a circumstance giving rise to an inference of discrimination. Likewise, the simple fact that Plaintiff's overtime may have been reduced to ensure equal distribution also does not give rise to an inference of discrimination. Importantly, Plaintiff does not come forward with evidence indicating that his overtime hours were low compared to his Caucasian coworkers. Plaintiff has no evidence indicating that he singled out or denied overtime based on his race. *See Winn v. Health South-Mid Am. Rehab Hosp.*, 2013 WL 6196309, at *3 (D. Kan. 2013) (granting motion to dismiss Title VII claim for denial of overtime opportunities because plaintiff did not

allege that she was singled out or that the denial of overtime was based on her race). Thus, no reasonable jury could find an inference of discrimination on this record.

Even if Plaintiff established a prima facie case, he cannot show pretext. Defendant does not identify evidence indicating that Defendant's stated reason for reducing Plaintiff's overtime (compliance with the CBA's even distribution requirement) is pretextual or unworthy of belief (e.g., evidence indicating his overtime hours were lower than Caucasian coworkers). And Plaintiff's subjective belief that the decision was discriminatory is insufficient to show pretext. *See Beaird v. Seagate Tec., Inc.*, 145 F.3d 1159, 1170 (10th Cir. 1998). Accordingly, the Court grants summary judgment in Defendant's favor on Plaintiff's claim of race discrimination based upon denial of overtime opportunities.

### 3.     Removal from Union Position

Plaintiff next alleges race discrimination based on his removal from his union steward position. Defendant contends that Plaintiff cannot establish a prima facie case for this claim. Defendant explains that Plaintiff lacks an adverse employment action attributable to Defendant because the union (not Defendant) made the decision to replace Plaintiff as union steward for assembly.[7] *See* Doc. 68-2 at 7-8 (Klass, the union president, testifying that the decision to remove Plaintiff was made by him and the committee).

Plaintiff does not controvert this fact but argues that Defendant's management was frustrated with Plaintiff and directed the union to remove Plaintiff from his position. But Plaintiff does not identify facts supporting this argument. Rather the cited evidence generally indicates Plaintiff's belief that Defendant's management directed the union to remove him. Plaintiff's belief is not enough to survive summary judgment. Thus, Plaintiff has not shown that his removal from

---

[7]   Defendant United Steelworkers, Local 13 was dismissed from this case on September 30, 2019.

his union steward position is an adverse employment action attributable to Defendant. Plaintiff does not establish a prima facie case, so the Court grants summary judgment in Defendant's favor on Plaintiff's race discrimination claim stemming from his removal from his union steward position.[8]

### 4.   Discriminatory Discipline

Lastly Plaintiff alleges race discrimination based on discriminatory discipline. He contends that he suffered an adverse employment action when he received a disciplinary notice after being falsely accused of misconduct and that the notice stayed in his file for almost three years. Doc. 68 at 46-47. Defendant contends that Plaintiff cannot establish a prima facie case because the disciplinary notice is not an adverse employment action.

The Court agrees with Defendant. A disciplinary notice constitutes an adverse employment action when it adversely affects the terms or conditions of the plaintiff's employment. *See Adcox v. Brennan*, 2017 WL 2405326, at *3 (D. Kan. 2017) (citing *Medina v. Income Support Div., State of N.M.*, 413 F.3d 1131, 1137 (10th Cir. 2005)). For example, the Tenth Circuit held in *Medina* that a warning letter did not constitute an adverse employment action where the letter did not affect the likelihood that the plaintiff would be terminated, did not undermine the plaintiff's current position, and did not affect the plaintiff's future employment opportunities. 413 F.3d at 1137.

Here, Plaintiff received a single disciplinary notice for violating a rule of conduct in February 2016. In December 2018, he received a letter signed by the union president and human resources confirming that the disciplinary notice was removed from his file and would not be used when making any future disciplinary decisions. But Plaintiff has set forth no evidence from which

---

[8]   Summary judgment would still be appropriate even if Plaintiff established a prima facie case because he has not shown pretext.

a reasonable jury could conclude that 2016 disciplinary notice adversely affected his employment. He argues that such notices "are considered for many purposes including but not limited to progressive discipline up to and including termination, as well as for promotional and transfer opportunities." Doc. 68 at 49. Properly supported, Plaintiff may have a better argument. But he does not support this statement. Instead, he cites a single statement of fact as support, and this sole fact states: "Disciplinary actions stay in a personnel file infinitely although it was supposed to be removed." Doc. 68 at 40. Plaintiff has not come forward with evidence indicating that he suffered any negative consequence as a result of the disciplinary notice. There is no record evidence suggesting that Plaintiff's wages were decreased, his hours were cut, he was ineligible for promotion or transfer, or there was a substantial change in his job responsibilities as a result of the disciplinary notice. *See Adcox*, 2017 WL 2405326, at *3; *Medina*, 413 F.3d at 1137.

Even if the disciplinary notice was an adverse employment action, Plaintiff has not shown an inference of discrimination. To the extent Plaintiff argues that Caucasian employees have engaged in similar conduct and avoided punishment, the Court finds that Plaintiff has not come forward with evidence demonstrating that any Caucasian coworkers were treated differently. Plaintiff claims that Jackson "threatened his life" and that Defendant took no action. But the record evidence establishes that Defendant investigated the incident, took witness statements, and took appropriate disciplinary action by issuing a final warning for violating Rule of Conduct #18. Accordingly, even if the single disciplinary action was an adverse employment action, Plaintiff has not provided evidence from which a reasonable jury could conclude that the disciplinary action was the result of race discrimination. *See Williams v. CoreCivic, Inc.*, 2019 WL 7372002, at *7

(D. Kan. 2019). Thus, the Court grants summary judgment on Plaintiff's race discrimination claim stemming from discriminatory discipline.[9]

The Court has considered Plaintiff's various allegations of racial discrimination. Plaintiff has presented a triable issue on the race discrimination claim based on denial of employment opportunities. But Defendant is entitled to summary judgment on the remainder of Plaintiff's race discrimination claims. There is no record evidence by which a reasonable jury could conclude that Plaintiff's overtime hours were cut or were lower than his Caucasian coworkers, that Defendant had Plaintiff removed from his union steward position, or that Plaintiff suffered any negative consequence as a result of the disciplinary notice. Accordingly, Plaintiff fails to establish a prima facie case and pretext for these claims.

### B.      Racial Harassment and Hostile Work Environment

Plaintiff's final § 1981 claim is for harassment and hostile work environment. [10] Doc. 63 at 6. This claim requires Plaintiff to show that: (1) he is a member of a protected group, (2) he was subject to unwelcome harassment, (3) the harassment was based on race, and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of his employment and created an abusive working environment. *Frazier v. GPI KS-SH, Inc.*, 2020 WL 2523290, at * 9 (D. Kan. 2020). The Court must examine the objective severity of the harassment from the perspective of a reasonable person in plaintiff's position, considering all the circumstances. *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012).

---

[9]    For substantially the same reasons, Plaintiff fails to show pretext.

[10]    Plaintiff also made a sexual harassment claim against a manager who followed him into the restroom and claims that this was never investigated. However, the cited deposition testimony confirms that human resources investigated the matter but did not find evidence to substantiate this allegation. Regardless, the allegation is not material to Plaintiff's race discrimination and harassment claims.

Defendant argues that Plaintiff cannot establish that he was harassed or suffered a hostile work environment based on his race and, even if he can, Plaintiff cannot establish that the conduct was sufficiently severe or pervasive to constitute a hostile work environment. Plaintiff responds by identifying two specific incidents: (1) the sharing of his overtime hours with coworkers and (2) an April 2017 event where a Caucasian coworker threatened to kill Plaintiff and Defendant did not interview an African American coworker who witnesses the death threat and did not allow Plaintiff to be excused from morning meetings that the threatening employee also attended.[11]

First, the Court agrees that Plaintiff cannot show that he was harassed or suffered a hostile work environment based on his race. The sharing of his overtime hours is addressed above and stems from the inspection and distribution requirements of the CBA. The Court also briefly addressed the April 2017 event in examining Plaintiff's pretext argument on his discriminatory discipline claim. Plaintiff alleges that Jackson threatened his life and said he would "kill your ass." Plaintiff reported the incident but did not claim that it was racially motivated. And while Plaintiff claims that this incident was "just the boiling point" for Jackson, the cited evidence does not establish that Jackson had a history of harassment or threatening behavior toward Plaintiff, racially motivated or otherwise. Defendant investigated the incident and interviewed employees. The investigation concluded that Jackson called Plaintiff a "son of a bitch." Although Plaintiff contends Defendant failed to interview the African American employee who witnessed the event, Plaintiff

---

[11] Plaintiff make other vague and conclusory allegations. But such conclusory allegations are insufficient to survive summary judgment. *Williams*, 2019 WL 7372002, at *10. Plaintiff also initially alleged that there were unspecified issues regarding the celebration of the Dr. Martin Luther King Jr. holiday that had "discriminatory implications." Doc. 13 ¶ 31. However, Plaintiff has since abandoned this argument as it is not referenced in the Pretrial Order or in his response to Defendant's motion to summary judgment. Even if considered, this luncheon does not change the outcome of this motion for either Plaintiff's race discrimination or harassment claim. Plaintiff lacks evidence that the complaints about the luncheon related to race.

points to no evidence suggesting that Defendant was ever notified of this witness.[12] Defendant issued Jackson a final warning for violating Rule of Conduct #18. And Defendant required Plaintiff to attend the meetings because everyone was required to attend the safety meeting as part of their jobs. Plaintiff lacks evidence from which a reasonable jury could find that the April 2017 event or Defendant's response was based on Plaintiff's race.

The Court also agrees that Plaintiff lacks evidence that any alleged harassment was pervasive or severe. A plaintiff "does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs" but instead "there must be a steady barrage of opprobrious racial comments." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007). No "steady barrage" is present here. Instead, over the span of four years, Plaintiff can only point to two instances of alleged harassment. Plaintiff had one discussion with his supervisor about his overtime hours in 2015, and the CBA required hours to be evenly distributed. And Defendant investigated and disciplined Jackson after the April 2017 incident. There is no evidence that Jackson engaged in threatening behavior or racial enmity since then. This record is too thin, and no reasonable jury could find that Plaintiff was subject to a hostile work environment. Accordingly, the Court grants summary judgment on Plaintiff's hostile work environment claim.

## IV.     CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 64) is GRANTED IN PART AND DENIED IN PART. Plaintiff's race discrimination claim

---

[12] Plaintiff argues that Defendant failed to interview Massie, who was also present and could corroborate Plaintiff's allegations. However, there is no evidence in the record that Plaintiff, Massie, or anyone else notified Defendant that Massie witnessed the incident.

based on denial of employment opportunities survives for trial. Defendant is entitled to summary judgment in its favor on the rest of Plaintiff's claims.

IT IS SO ORDERED.

Dated: February 3, 2021                    /s/  *Holly L. Teeter*
                                           HOLLY L. TEETER
                                           UNITED STATES DISTRICT JUDGE