IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GARY ALLEN ROSS,

    **Plaintiff,**

    v.

PENTAIR FLOW TECHNOLOGIES, LLC,

    **Defendant.**

Case No. 2:18-cv-02631-HLT

### MEMORANDUM AND ORDER

This is a race discrimination case under 42 U.S.C. § 1981 that the parties resolved two weeks before trial when Plaintiff accepted Defendant's $50,000 offer of judgment. The offer of judgment did not include attorneys' fees. The parties agree that Plaintiff is entitled some attorneys' fees as a prevailing party but disagree on the amount. Plaintiff contends he is entitled $373,630, which is twice the lodestar.[1] Defendant contends the proper amount is closer to $46,000.

The Court agrees a fee award is appropriate but finds that Plaintiff's requested amount is not reasonable. The requested rates are too high, some of the billing entries are not sufficiently detailed or involve clerical work, and Plaintiff had limited success. Thus, after careful review, the Court exercises its discretion and awards **$126,920.63** in attorneys' fees.

**I.    BACKGROUND**

Plaintiff is African American. He began working for Defendant in 1994 and remains employed there. He filed this lawsuit pro se in November 2018. Gerald Gray II then agreed to

---

[1] Plaintiff seeks: $136,080 (340.2 hours at $400/hour) for attorney Gerald Gray II; $42,580 (106.45 hours at $400/hour) for attorney Kenneth Kinney; $6,247.50 (35.7 hours at $175/hour) for paralegal/law clerk Myra Gray; $2,485 (14.2 hours at $175/hour) for paralegal Leslie Lamble; and $1,907.50 (10.9 hours at $175/hour) for paralegal Kimberly Gemmer.

represent Ross. Gray represented Plaintiff by himself for most of this lawsuit. But Kenneth Kinney appeared as co-counsel in May 2021 as this case got close to trial.

Plaintiff filed an amended complaint in July 2019 with the assistance of counsel and asserted four claims. Defendant moved to dismiss all claims, and the then-assigned judge dismissed all claims except Plaintiff's 42 U.S.C. § 1981 race discrimination claim.[2] Within this sole claim, Plaintiff asserted multiple theories. Discovery ensued. The parties exchanged written discovery and took depositions. And the magistrate judge entered a pretrial order setting a dispositive motion deadline.

Defendant timely moved for summary judgment. The undersigned resolved the motion in February 2021 and found that Defendant was entitled to summary judgment on all claims except Plaintiff's race discrimination claim concerning the denial of employment opportunities. The theory behind Plaintiff's surviving claim was that Defendant offered apprenticeships to Caucasians but not African Americans.

The undersigned set trial for July 2021 and ordered the parties to mediate. Mediation was not successful, and the parties began trial preparations. Defendant filed a notice of offer of judgment on June 28, 2021. The offer states:

> Defendant offers to allow Plaintiff to take judgment against it in the full and final resolution of all claims asserted in this action in the total sum of Fifty Thousand Dollars and No Cents ($50,000.00). This sum includes all damages and costs to date, including, but not limited to, alleged compensatory, emotional distress, and punitive damages. <u>This offer does not include attorney's fees</u>. This offer may only be accepted if, within fourteen (14) days of service of this offer, Plaintiff serves written notice that the offer is accepted, then this offer, together with a Notice of Acceptance, will service as the basis of a judgment entry for the District Court.

---

[2]  This case was reassigned to the undersigned in February 2020.

Doc. 153 (emphasis added). Plaintiff accepted the offer three days later. The sole remaining issue is attorneys' fees.

## II.     ANALYSIS

The parties agree that Plaintiff is entitled to attorneys' fees under 42 U.S.C. § 1988 as a prevailing party on his § 1981 claim. The relevant part of § 1988 states that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs" of the action.

Courts determine the reasonableness of the fee request by calculating the lodestar, which is the product of the reasonable hourly rate and the number of hours the plaintiff's counsel reasonably spent on the litigation. *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998). Courts then determine whether an adjustment to the lodestar is appropriate. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). Importantly, the party seeking fees has the burden of establishing entitlement to them. *Case*, 157 F.3d at 1249.

### A.     Reasonable Hourly Rate

The Court determines a reasonable hourly rate by deciding "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Id.* at 1256 (internal quotation omitted).

Plaintiff seeks the following rates: $400/hour for Gray, $400/hour for Kinney, $175/hour for Myra Gray (paralegal/law clerk), and $175/hour for two paralegals (Leslie Lamble and Kimberly Gemmer). Plaintiff contends these rates are reasonable because counsel is experienced, these rates are in line with market rates for the Kansas City area, and counsel took this case on a contingency fee basis. Plaintiff supports these rates by citing several cases and offering a declaration from each of the five professionals for whom fees are requested. Plaintiff also offers

3

five declarations from attorneys in the area (Dennis Egan, Martin Meyers, John Kurtz, Kirk Holman, and Michael Williams) and submits a few publications including the 2019 billing rates from Missouri Lawyers Media.

Defendant contends the $400/hour rate for Gray and Kinney is unreasonable. It argues that Plaintiff has not shown that this rate is the prevailing market rates in Kansas City, Kansas. And it argues that Egan, Meyers, Kurtz, Holman, and Williams have considerably more experience than Gray and Kinney. Defendant contends that $250/hour is reasonable but does not offer any specific evidence in support of this rate. And Defendant does not challenge the $175/hour rate for the three other timekeepers.

The Court finds that Gray and Kinney would receive $375/hour if selling their services in the market. Gray graduated from the University of Missouri-Kansas City School of Law in 2014. He graduated with honors and served as an editor for the UMKC Law Review. He initially worked for a law firm representing employees and employers in employment matters. He started his own firm in October 2015 and represents plaintiffs in employment matters. He has had four jury trials and was awarded a rate of $400/hour in 2019 state-court employment case that resolved before trial.

Kinney also graduated from UMKC School of Law in 2014. He finished first in his class. His immediate work after law school is not clear, but he was involved in litigation. Kinney became self-employed with Ralston Kinney LLC in July 2017. He primarily represents clients in employment discrimination matters and acts as managing partner of the firm. He has had eight jury trials and has been awarded a rate of $300/hour in a federal employment discrimination case in 2017.

4

The Court finds the $375/hour rate reasonable for this market for several reasons. First, the Court agrees with Plaintiff that the relevant market is the Kansas City metropolitan area and is not limited to Kansas City, Kansas. *See Fox v. Pittsburgh State Univ.*, 258 F. Supp. 3d 1243, 1264 (D. Kan. 2017) (rejecting same argument). Although the courthouse is in Kansas City, Kansas, it is a mere few miles from the state line. Most practitioners practice on both sides of the state line and do not vary their rate depending on whether the case is filed in Kansas or Missouri. Second, the Court notes that the five practitioner affidavits offered by Plaintiff come from attorneys who principally (if not exclusively) represent plaintiffs and thus have an interest in courts approving higher hourly rates. Third, the Missouri Lawyers Media only provides median rates that were gathered from fee applications filed with courts within the last 12 months. The publication expressly notes that rate information comes from several types of cases (i.e., not limited to discrimination cases), uses the attorney's standard or customary rates rather than the rate the court applied, and is a sampling only. Doc. 159-5 at 2. Fourth, the Court does not agree with all Defendant's criticisms of the practitioner affidavits because these attorneys are still competent about rates generally. But the Court agrees that the affidavits are all from practitioners who have substantially more experience than Gray and Kinney. And the Court notes that some of these practitioners charge about $500/hour despite many more years of experience in similar fields. Fifth, although Gray received $400/hour in a recent state-court case, he does not provide any details about that lawsuit including whether his rate was contested.[3] And the 2017 lawsuit involving Kinney stemmed from a default judgment where no opposition to the motion for attorneys' fees was filed.

---

[3] Gray identifies the case as *Ross v. Costco Wholesale Corp. et al.*, 2017-cv-15824, in Jackson County, Missouri. It seems this is a mistake, and the case is properly titled *Hines v. Costco Wholesale Corp. et al*.

The Court does not question the skill or ability of Gray or Kinney. But it seems that $400/hour is slightly high. Each has been practicing law for about 7.5 years (Gray had been practicing about five years when he first got involved). This case did not involve complex law or any particularly difficult legal or factual issues. It did involve a contingency-fee arrangement,[4] which injects risk and delayed payment, and spanned about two years for Gray and a few months for Kinney. The Court gives little weight to Defendant's proposed rates, which are unsupported and seem low for the market. Thus, for all these reasons and after carefully reviewing and considering the evidence, the Court awards Gray and Kinney a rate of $375/hour. Because Defendant does not meaningfully contest the requested rate for the three other timekeepers and their rates appears reasonable (albeit on the high-end),[5] the Court awards $175/hour for the three remaining timekeepers.

### B.     Reasonable Number of Hours

The Court next determines the hours reasonably spent by counsel litigating this case. *Case*, 157 F.3d at 1250. Plaintiff has the burden of proving hours by "submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Id.* Once the Court has adequate records before it, the Court "must then ensure that the winning attorneys have exercised billing judgment." *Id.* (internal quotation omitted). After examining billing judgment, the Court "should look at the hours expended on each task to determine if they are reasonable." *Id.*

---

[4]     The Court acknowledges that the contingent-fee nature should be reflected in the form of a higher hourly rate. *See, e.g.*, *City of Burlington v. Dague*, 505 U.S. 557, 563-67 (1992).

[5]     *See, e.g.*, *M.B. v. Howard*, 2021 WL 3681084, at *14 (D. Kan. 2021) (reducing requested rate of $200/hour for paralegals to $150/hour).

### 1. Sufficient Records

The initial issue is determining whether the party seeking fees submitted sufficient records. Plaintiff submitted billing records for all five timekeepers. Defendant contends that some of the billing records are imprecise and do not reveal how hours were allotted to specific tasks. *See Case*, 157 F.3d at 1250 (noting that a court is "justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise'"). Defendant highlights several examples of block billing, *see* Doc. 160 at 8-9, and contends a reduction is warranted.

The Court agrees that some time entries are vague and fail to document adequately how the timekeeper utilized large blocks of time. *Case*, 175 F.3d at 1250. This vagueness makes it difficult for the Court to determine whether the work was unnecessary, redundant, or excessive. One example is Gray's entry for 11.9 hours for "[w]orking on preparing suggestions in opposition to summary judgment." Doc. 157-1 at 9. He might have spent this entire time doing recoverable work like researching and drafting the opposition. Or he might have some spent some portion of time doing non-recoverable duplicative work or lower-rate paralegal or clerical work like gathering exhibits. The Court cannot tell. A small reduction is warranted to address this concern, but the records before the Court are otherwise sufficient.

### 2. Billing Judgment

The Court next determines whether Plaintiff has demonstrated billing judgment. Billing judgment involves "winnowing the hours actually expended down to the hours reasonably expended." *Case*, 157 F.3d at 1250. Stated differently, the Court considers whether the hours requested would be properly billed to counsel's client. *Id.*

Plaintiff does not expressly argue that his timekeepers exercised billing judgment. But he does argue that the hours submitted by counsel are reasonable and necessary considering the nature

7

of this case. And Gray states in his declaration that the services he rendered were not duplicated by the work of others. Doc. 157-1 at ¶ 14. Defendant contends that Plaintiff did not exercise billing judgment because he seeks attorney and paralegal rates for purely secretarial tasks. Doc. 160 at 15.

The Court agrees that some of the entries request attorney or paralegal rates for secretarial work. One example is the multiple paralegal entries (generally for 0.2 hours each) for "saving" a document (e.g., "Saving Plaintiff's Notice of Service"). *See, e.g.*, Doc. 157-4 at 4-5. These entries reflect work easily accomplished by a secretary at a lower rate. The Court finds that this time would not be properly billed to a client at this rate, so a small reduction is again warranted. With this exception the Court finds that Plaintiff otherwise exercised billing judgment in the fee request.

### 3. Hours Expended.

The third and final step for calculating the lodestar requires the Court to look at the hours expended on each task to determine if they are reasonable. *Case*, 157 F.3d at 1250. Plaintiff generally argues that the hours submitted by counsel are reasonable and necessary considering the nature of this case. Defendant's principal contention is that Plaintiff should only recover for work on his successful claim and that his fee request must be drastically reduced because the time entries do not delineate between Plaintiff's successful and unsuccessful claims.

The Court addresses Defendant's central argument below when it analyzes whether the lodestar should be reduced. Putting aside that issue, the Court finds that the hours expended on each task is reasonable. It is reasonable to spend about 10 hours opposing a motion to dismiss. Likewise, it is reasonable to spend about 30 hours opposing a fact-intensive summary judgment motion. More broadly, the total hours requested are reasonable given the claims in this case, the fact-intensive claims, the extent of discovery, the protracted nature of the litigation, and the

8

proximity to trial when the case settled. It is equally reasonable for Gray to recruit Kinney to assist with trial earlier this year after a claim survived summary judgment.

As noted above, there are few areas requiring a minor adjustment to the lodestar. The Court reduced the rate for Gray and Kinney to $375/hour. And the Court found small reductions necessary to account for block billing and excessive rates for secretarial tasks. The Court reduces the requested hours by 5% to account for these latter issues. The Court thus calculates the lodestar as **$169,227.50**.

| Attorney/ Staff | Rate | Requested Hours | Adjusted Hours | Fee |
|---|---|---|---|---|
| Gerald Gray II | $375/hour | 340.2 | 323.2 | $121,200.00 |
| Kinney | $375/hour | 106.45 | 101.1 | $37,912.50 |
| Myra Gray | $175/hour | 35.7 | 33.9 | $5,932.50 |
| Lamble | $175/hour | 14.2 | 13.5 | $2,362.50 |
| Gemmer | $175/hour | 10.9 | 10.4 | $1,820.00 |
| **Total** | | | | **$169,227.50** |

### C. Lodestar Adjustment

The parties finally argue that an adjustment to the lodestar is appropriate. Plaintiff contends a doubling of the lodestar is appropriate because of his exceptional results. Defendant contends the lodestar should be reduced because of Plaintiff's limited success.

The determination of the lodestar does not end the inquiry. Other considerations "may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'"[6] *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). This results-obtained factor is particularly important where a plaintiff "is deemed 'prevailing' even though he succeeded on

---

[6] In assessing whether adjustments should be made, courts often consider the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Fox*, 258 F. Supp. 3d at 1254. Although these factors may be considered, the court does not need to consider the factors subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate. *Id*. Here, most of the factors were addressed in the lodestar calculation or are neutral. In determining whether adjustments should be made, the Court focuses on the eighth factor, the amount involved and the results obtained.

only some of his claims for relief." *Id.* In that situation, like here, a court should consider: (1) whether the plaintiff's successful and unsuccessful claims were related, and (2) whether the plaintiff's level of success makes the hours reasonably expended a satisfactory basis for the award. *Id.*

The Court starts with the first inquiry and considers whether Plaintiff's successful and unsuccessful claims were related. This requires the Court to determine whether Plaintiff "has failed to prevail on a claim that is distinct in all respects from his successful claims." *Id.* Defendant strongly contends Plaintiff's claims were not related and stemmed from separate facts. It then attempts to ferret out certain facts and claims in its exhibits. *See* Doc. 160 at 9-14, Doc. 160-2, Doc. 160-3.

The Court disagrees with Defendant. Plaintiff's claims for failure to promote, denial of overtime opportunities, removal from his union position, discriminatory discipline, harassment, hostile work environment, and retaliation are sufficiently related. These claims all stem from the same core facts, i.e., Plaintiff's employment and treatment at the workplace. Although some facts may be attributable to just one claim or another, they all arise during the same timeframe, include most of the same people, and occurred at the same location. And the legal theories asserted by Plaintiff, (i.e., discrimination, harassment, retaliation, hostile work environment) all share a similar legal framework as applied in this case. *See Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998) (indicating that civil rights suits often involve multiple claims based on a common core of facts or related legal theories); *Roth v. Bernalillo Cnty. Sheriff's Dep't*, 1999 WL 35809596 (D.N.M. 1999) (finding discrimination and retaliation claims interrelated and based on a "common core of facts"). The Court does not agree with Defendant's parsing and finds it impossible to

10

dissect Plaintiff's facts, theories, and claims. Thus, the Court finds that Plaintiff's successful and unsuccessful claims are related and are not distinct in all respects.

The Court turns to the second step, which asks whether Plaintiff's level of success makes the hours reasonably expended a satisfactory basis for the award. Plaintiff contends his exceptional results of a $50,000 monetary judgment, continued employment, and a promotion to an apprenticeship warrants a doubling of the lodestar. The Court agrees that Plaintiff received monetary relief, maintained employment, received a promotion, and vindicated an important right that cannot be valued solely in monetary terms. *See, e.g.*, *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards."). He should be proud and pleased with the result. But, equally, the record does not identify any institutional or tangible changes secured by this case. Plaintiff notes his current apprenticeship and Defendant's earlier denial of its existence. But it was uncontroverted at summary judgment that Plaintiff did not submit a written bid for any of the openings at issue in this litigation. And the instant record indicates that Plaintiff received his apprenticeship during the pendency of this case after he submitted a written bid as Defendant consistently argued was required. Thus, the Court concludes that Plaintiff's qualitative results do not warrant a doubling of the lodestar.[7]

Defendant contends that Plaintiff did not obtain significant success in this lawsuit and that a reduction is warranted.[8] The Court agrees that a qualitative approach to assessing Plaintiff's

---

[7] Plaintiff also points to the practitioner affidavits as support for his "exceptional results." But the probative value of these affidavits is lessened because the individuals have an interest in higher awards and because their qualitative understanding of the entire record is not clear.

[8] Defendant also argues that a lodestar enhancement is not permitted in cases where the plaintiff was represented on a contingency-fee basis. Doc. 160 at 4. The issue in *Dague* was whether courts may enhance the fee award above the lodestar amount to reflect the fact that the plaintiff's attorneys were retained on a contingent-fee basis

11

overall success warrants a reduction. Plaintiff filed four claims, and the originally assigned judge dismissed all but one in resolving an early motion to dismiss. Within the sole remaining claim, Plaintiff asserted six theories. The Court granted summary judgment to Defendant on all but one theory. To summarize, only one theory of one claim survived for trial. The Court recognizes that a mathematical approach is not the proper analysis, but the Court recites this background to highlight the narrowing of the issues (and related relief) over the course of this case.

This narrowing is also noticeable from Plaintiff's damage calculation and demands. Plaintiff requested the following damages in the Pretrial Order: $54,600 in lost compensation and benefits, $163,800 in compensatory damages, and $546,000 in punitive damages. Doc. 63 at 9. After summary judgment, Plaintiff made a pre-mediation demand of $500,000 if Plaintiff remained employed and moved into a machinist position, or $2.6 million if Plaintiff resigned. *See Justice v. Crown Cork & Seal Co.*, 2009 WL 10711012 (D. Wyo. 2009) (holding that Fed. R. Evid. 408 allows the court to consider settlement negotiations in deciding whether to reduce a lodestar amount). Mediation was not successful. But Plaintiff later accepted Defendant's $50,000 offer of judgment a mere two weeks before trial. Again, the Court highlights this timeline to assist with a qualitative assessment of Plaintiff's success, not to conduct a proportional reduction of fees.

The Court carefully reviewed the record and is familiar with this litigation and its progress over the last eighteen months. The Court is troubled by the significant difference between the damages Plaintiff claimed in the Pretrial Order and the offer of judgment he accepted. The Court also cannot ignore the number of unsuccessful claims and theories pursued by Plaintiff in this case.

---

and thus assumed the risk of receiving no payment at all for their services. *Dague*, 505 U.S. at 559. The Court held that an enhancement for contingency was not appropriate because it would likely duplicate factors already subsumed in the lodestar, i.e., higher hours expended to overcome the difficulty or higher hourly rate of skilled attorneys. *Id*. at 562. The Court did not address whether an enhancement for reasons other than contingency was permitted.

The Court does not tally wins and losses but the number of unsuccessful claims merits consideration. The Court's assessment of this case and all the facts listed above leave it with the firm conclusion that Plaintiff's level of success was limited and that the lodestar must be reduced.

The Court finds that a 25% reduction of the lodestar amount is equitable and justified. This reduction reflects Plaintiff's tangible and prevailing victory on his failure to promote claim, but also accounts for his lack of success in the overall case.[9] *See, e.g.*, *Roane v. Frankie's Bar & Grill*, 2018 WL 4076287 (D. Colo. 2018) (applying 45% reduction when the plaintiff prevailed on pregnancy discrimination claim but lost on two other claims and jury awarded damages of $500 when the plaintiff had requested over $10,000); *Dunn & Fenley, LLC v. Diedrich*, 2012 WL 359753, at *7 (D. Kan. 2012) (applying an 80% reduction in part because the plaintiff demanded $862,285 in damages but settled the case for $50,000 and defendant's agreement to change power point slides); *Caputo v. Prof'l Recovery Servs., Inc.*, 2004 WL 1503953, at *9 (D. Kan. 2004) (reducing lodestar by 20% after "considering the expanse between [the plaintiff's] multi-million dollar prayer and his acceptance of $15,000"); *Dill v. City of Edmond*, 72 F. App'x 753, 756-58 (10th Cir. 2003) (holding that district court did not abuse its discretion in awarding only $23,500 of requested $130,000 in attorneys' fees when the plaintiff's ultimate success and damages on some claims were modest in comparison with his larger pursuit of claims and damages against the defendants). The Court thus awards **$126,920.63** in attorneys' fees.[10]

---

[9] The Court recognizes Plaintiff's argument that Kinney should receive all his fees because his representation did not begin until after the summary judgment rulings. But Plaintiff did not carve out his fees or account for late appearance when seeking a multiplier. And the Court overarchingly looks at the lodestar as it relates to Plaintiff's success. Here, the Court finds a 25% reduction to the lodestar is appropriate and will not delve into the division of that award between timekeepers.

[10] ($169,227.50 * 0.75 = 126,920.63).

13

### III. CONCLUSION

THE COURT THEREFORE ORDERS Plaintiff's motion (Doc. 218) is GRANTED IN PART. The Court awards **$126,920.63** in attorneys' fees.

IT IS SO ORDERED.

Dated: November 22, 2021                    /s/ *Holly L. Teeter*
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE